Jesse C. **WAGNER**, II, Plaintiff,

v.

**GENERAL ELECTRIC COMPANY**, Defendant.

Civ. A. No. 88–8791.

United States District Court, E.D. Pennsylvania.

April 12, 1991.

Harvey S. Miller, Windolph, Burkholder, Stainton & Gray, Lancaster, Pa., for plaintiff.

John H. Leddy, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

MEMORANDUM

TROUTMAN, Senior District Judge.

The above-captioned action was brought by plaintiff, Jesse C. Wagner, II, in the Lancaster County Court of Common Pleas alleging that his discharge from the employ of defendant, General Electric Company, was wrongful and violated the law of Pennsylvania as being contrary to public policy. The law of Pennsylvania controls this case since the action was removed to the United States District Court for the Eastern District of Pennsylvania, 28 U.S.C. § 1441, wherein lies Lancaster County, upon the basis of diversity jurisdiction, 28 U.S.C. § 1332. Removal was timely since defendant removed the action within 30 days of the Order of the Court of Common Pleas granting Leave to Discontinue as to Less Than All Defendants, which Order gave rise to complete diversity as plaintiff is a citizen of Pennsylvania and defendant is organized and existing under the laws of, and maintains a principal place of business in, the State of New York. The amount in controversy exceeded the jurisdictional amount at the time the case was removed. Removal, and thus jurisdiction, are proper.

Defendant filed a Motion for Leave to File a Motion for Summary Judgment, which also contained defendant's Motion for Summary Judgment, as the time established by the Court for filing motions for summary judgment had elapsed. The Court first heard oral argument on these motions and took the motion for summary judgment under advisement. *See*, Minute Sheet (Doc. # 7). Plaintiff filed a response to the motion for summary judgment to which defendant replied. To clarify ambiguities on the record, if any, the Court considers the action appropriate for summary judgment and will grant defendant leave to file the out of time motion for summary judgment. Having considered the arguments raised by counsel and the law of Pennsylvania relating to the tort of unlawful discharge, for the reasons that follow, the Court will grant defendant's motion for summary judgment.[1]

---

1. Plaintiff's brief in opposition, in a footnote, states that the motion, under Fed.R.Civ.P. 56, is more accurately called one for judgment on the pleadings under Fed.R.Civ.P. 12(c). Although defendant does not argue for treating the motion as such, treating the motion under either

## I. *Background.*

Plaintiff began his employment with defendant sometime during July 1983. His main function was to apply his knowledge and technical ability to the needs of customers who purchased low light level security cameras, and to increase sales of these products. Defendant's Pre-trial Memorandum, at 2. Among the customers to whom plaintiff travelled and with whom he dealt were the Immigration and Naturalization Service ("INS"), and the Department of the Navy ("Navy"). Plaintiff's complaint admits that he was critical of defendant's product and manner of manufacturing, and expressed this criticism to defendant's customers. Although plaintiff's supervisors expressed their concern about such negative portrayals of the company to plaintiff, the criticisms continued. *See generally,* Complaint, at ¶¶ 6–10 (attached to Defendant's Notice of Removal, Doc. # 1, Exhibit "A").

During November, 1985, plaintiff and others instituted a lawsuit against the Borough of Marietta, wherein plaintiff lived. That lawsuit, and thereby plaintiff, received substantial publicity. His supervisors expressed their concern to plaintiff about the publicity and visibility he received as a result of the lawsuit. Notwithstanding his employer's concerns, plaintiff continued active participation in the lawsuit. *See generally, Id.* at ¶ 11–14.

Plaintiff claims that about January 22, 1986, plaintiff's supervisors gave plaintiff a performance evaluation, dated December 23, 1985, expressing dissatisfaction with his performance. On January 24, 1986, plaintiff was terminated by defendant. *Id.* at ¶¶ 14–15. Defendant denies this and responds that two written appraisals were prepared, one dated July 26, 1984, the other on October 10, 1985, both of which reflect below average performance by plaintiff. Answer, at ¶ 14 (attached to Defendant's Notice of Removal, Doc. # 1, Exhibit "B"). Defendant asserts that it conducted annual performance reviews of all employees, in-

cluding plaintiff, and that these reviews revealed that plaintiff's work was sub-par. *Id.* at ¶ 10. Plaintiff was repeatedly warned about his poor performance and that termination might result if it did not improve. *Id.* at ¶ 38. Essentially, defendant argues, plaintiff was terminated for poor job performance and no other reason. Finally, defendant asserts that plaintiff was employed at-will. Plaintiff has not alleged that he was employed under any contract that would control the decision to discharge him, and so plaintiff was employed at-will.

### A. Plaintiff's Claims.

Plaintiff's complaint asserts three counts, each of which is a claim for unlawful discharge. Plaintiff's brief in opposition, at 1, summarizes plaintiff's claims thus:

1) [Plaintiff] was fired due to his decision to exercise his right to bring [the above mentioned lawsuit against the Borough of Marietta] under Article 1, Section 11, of the Pennsylvania Constitution;

2) [Plaintiff] was discharged in retaliation for exercising a right protected by the First Amendment to the United States Constitution; and

3) [Plaintiff] was wrongfully fired as a reprisal from the critical and derogatory analysis he had provided to his employer's customer which action is contrary to the public policy of protecting "whistle blowers".

Plaintiff's complaint further alleges that the actions alleged in all counts violate public policy, and Counts I and II are in violation of the common law of Pennsylvania. Complaint, at ¶ 14 and ¶ 19.

Defendant's brief in support, at 6, summarizes the claims as follows:

Counts I and II of the complaint basically allege the same theory. In those counts, plaintiff claims that he has a constitutional right to conduct litigation against whomever he chooses and that his employer cannot lawfully terminate his em-

---

rule would not alter the decision. Further, whether or not defendant put in evidence in support of the motion beyond the pleadings,

plaintiff may have brought forth evidence to support his opposition but did not so choose.

ployment for doing so. Count III sets forth the separate theory that "whistle blowing" is a protected activity which gives rise to a cause of action for wrongful discharge for terminated "whistle blowers".

## B. Defendant's Response.

Defendant's answer denies that plaintiff was fired for any reason other than his poor performance. Regarding Counts I and II, defendant "denies that plaintiff was terminated from employment due to his decision to exercise any right he may have had to bring legal action ..." and "defendant denies that the decision to terminate the plaintiff is contrary to the public policy of Pennsylvania and the United States." Answer, at ¶ 17 and ¶ 23. Paragraph 17 also denies that plaintiff performed in a competent, diligent, and honest manner, and alleges instead, "plaintiff consistently performed his job poorly...." Defendant's answer, at ¶ 7, denies that "plaintiff provided 'technical expertise' to [the Navy] and [the INS]. Although his responsibilities included providing technical assistance to the Navy and the INS, plaintiff failed to meet these responsibilities."

Responding to Count III, defendant denies that plaintiff was terminated due to any alleged advice to the Navy or the INS, any criticisms of defendant's product, or any "whistle blowing". Instead, the "decision to terminate plaintiff was based solely on plaintiff's poor performance." *See generally,* Answer, at ¶¶ 27–29.

Defendant, as new matter or defenses, asserts that plaintiff was an at-will employee who could be fired with or without cause; that defendant had good cause; any personnel decision was based on plaintiff's work performance; and prior to terminating plaintiff, defendant repeatedly warned plaintiff about his performance and that it may lead to his dismissal.

Each party essentially agrees on the characterization of plaintiff's claims. The Court must now decide whether there is a cause of action in tort for unlawful discharge, and if so, are the reasons which plaintiff alleges lead to his termination sufficient breaches of recognized public policy mandates under Pennsylvania law to sustain the claims, and finally, does the complaint state, or is there other evidence of, separate, legitimate reasons for defendant's termination of plaintiff independent of the reasons asserted by plaintiff.

## II. *Legal Standards Controlling a Motion for Summary Judgment.*

Although familiar, the standards applicable to the Court's consideration of a motion for summary judgment bear repeating. Summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

To defeat summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.,* one upon which a reasonable factfinder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court is not permitted, when considering a motion for summary judgment, to weigh the evidence or make determinations as to the credibility thereof. The Court's sole function, with respect to the facts, is to determine whether there are any disputed issues and, if there are, to determine whether they are both genuine and material. *Id.* The Court's consideration of the facts, however, must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358 (3d Cir.1987). For the instant motion, however, the Court need not use such an approach. Defendant's brief in support, which was fully incorporated in its motion, states "[f]or the purposes of this motion only, General Electric must assume that all the allegations in plaintiff's complaint are true. [E]ven assuming the truth of plaintiff's allegations, General Electric is entitled to judgment as a matter of law in this case." Brief in Support, at 1. *See also, Id.* at 5. Although defendant is incor-

rect that it must assume all of plaintiff's allegations as true in a motion for summary judgment, the Court will also treat all of plaintiff's allegations as true, thus eliminating any dispute of fact. The Court, nonetheless, concludes that defendant is correct that it is entitled to judgment as a matter of law.

Having thus set forth the general standards which govern the Court's consideration of the instant motion, we will now proceed to the substantive application thereof to the matter at hand.

### III. *Arguments of the Parties.*

In sum, defendant argues that it is entitled to judgment since plaintiff was an at-will employee who was lawfully discharged. Further, the complaint itself discloses legitimate reasons for discharging plaintiff. Finally, that if there is indeed a cause of action for unlawful discharge, recent Pennsylvania Supreme Court cases show that public policy exceptions thereto, if any, are strictly and narrowly defined and that plaintiff's arguments do not rise to any recognized exceptions to the employment at-will doctrine.

Plaintiff responds that defendant reads the case law too narrowly, that the Pennsylvania Supreme Court has not reversed itself on the law of unlawful discharge. Further, that there are many recognized exceptions to the employment at-will doctrine, including, *inter alia,* right of access to the courts.

### IV. *Pennsylvania Law Regarding Unlawful Discharge.*

■ The Supreme Court of Pennsylvania's decisions on a tort action for unlawful discharge start with *Henry v. Pittsburgh & Lake Erie Railroad Company,* 139 Pa. 289, 21 A. 157 (1891), in which plaintiff (and other employees) was suspended pending an investigation of irregularities in his department. Before the Pennsylvania Supreme Court, plaintiff argued that a company has no right to suspend, and then discharge, an employee without explanation of whether it is the result of dishonest conduct; that it cannot discharge mali-

ciously, without probable cause, harshly, and oppressively such that dishonesty on the part of plaintiff is inferred. Plaintiff concluded that a cause of "action lies where a lawful act is done in an illegal, negligent or unreasonable manner, and injury results." *Id.,* 139 Pa. at 295. Defendants in *Henry* argued that this count did not state a cause of action as the company had a right to suspend and discharge the plaintiff with or without cause.

The pertinent part of the Court's opinion reads as follows:

> It appeared that the plaintiff was in the employ of the defendant company, as traveling passenger-agent, in the passenger-ticket department. By reason of alleged irregularities in this department, the general superintendent, in the year 1887, suspended all the employees therein, pending an investigation. The right to do this was not, and could not well be disputed, without greater shock to the relations of employer and employee than we are disposed to sanction. A railroad corporation, or an individual, may discharge an employee with or without cause, at pleasure, unless restrained by some contract.

*Id.,* 21 A. at 157. Subsequent to the *Henry* case, the Pennsylvania Supreme Court did not again address the issue of an unlawful discharge based in tort until 1974. Until then, and afterwards, the rule remained *Henry's* rule: an employer could "discharge an employee with or without cause, at pleasure, unless restrained by some contract", or what is now known as employment at-will.

As noted above, in 1974 the Pennsylvania Supreme Court once more faced the question of a tort action for wrongful discharge in *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). Plaintiff in *Geary,* a salesman for defendant, filed suit alleging wrongful discharge in retaliation for his expressions of doubt regarding the quality and safety of a certain product to his superiors, and which product was eventually withdrawn from the market. Plaintiff argued that he was acting in the best interests of the company

and the public by opposing the marketing of a product he thought was defective, and in such a case a public policy exception to the *Henry* rule should be made. The Court phrased the issue involved thusly: "Against the background of these changes [in economic and business conditions since *Henry*], the broad question to which appellant invites our attention is whether the time has come to impose judicial restriction on an employer's power of discharge." *Geary*, 319 A.2d at 176.

The Court answered in the negative: "we are not persuaded that creating a new non-statutory cause of action of the sort proposed by appellant [public policy] is the best way to achieve this result." *Id.* at 180. Clearly, the Court contemplated that any change to the employment at-will doctrine was to come from the legislature. *Dicta* contained in the final paragraph received more attention, however, wherein the Court stated "[i]t may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power to discharge *might plausibly* give rise to a cause of action, particularly where some recognized facet of public policy is threatened." *Id.* (emphasis added). The law that is to be pulled from this last paragraph is stated in the last sentence: *"We hold only* that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Id.* (emphasis added).

If the *dicta* mentioned above is put aside momentarily, the holding of *Geary* would seemingly allow for an action for wrongful discharge *if* a "clear mandate of public policy is violated thereby". When the Court wrote that "we are not persuaded

that creating a new non-statutory cause of action of the sort proposed by appellant is the best way to achieve this result", it left to the legislature, or at least not to the courts, the question of what is a "clear mandate of public policy". *Geary*, therefore, would seem to hold that there is no cause of action for wrongful discharge unless the legislature had so provided.[2] The *dicta* mentioned above, which conceded a cause of action might plausibly exist, "particularly where some recognized facet of public policy is threatened", merely contemplated that a cause of action may exist once the public policy is determined, and as pointed out, determined by the appropriate body, the Pennsylvania Legislature. Subsequent interpretations of *Geary* by courts other than the Supreme Court of Pennsylvania, however, did not view the case this way.

The Pennsylvania Supreme Court did not need to wait 83 years before being faced with the issue again. The issue arose fifteen years after *Geary* in the case of *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989), in which plaintiffs, husband and wife, brought suit against their employer and alleged that their at-will employment was terminated since Mary Clay would not accede to the sexual advances of defendant's management employees. The Supreme Court's decision essentially rested on the interpretation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.S.A. § 951 *et seq.*, which provides administrative relief for a victim of certain prohibited acts, including sexual discrimination in employment.

A victim of a common law tort may press a claim before the Pennsylvania Human Relations Commission ("PHRC"), exclusively, for one year with recourse thereafter to the courts, or may proceed in court, but may not proceed before both forums at the same time when the claim is a common law tort and not a claim recognized only under

---

**2.** Justices Nix and Manderino dissented without opinion or any indication of reason why. Justice Roberts dissented and wrote his reasons therefor. Essentially Justice Roberts argued that the Court is an appropriate forum to effect the changes and public policy findings which

the majority believed were better left outside the courts: "This Court should, in my view, fulfill its societal role and its responsibility to the public interest by recognizing a cause of action for wrongful discharge where the dismissal offends public policy." *Geary*, 319 A.2d at 185.

the PHRA. The issue of the exclusiveness of remedies before the courts or the PHRC was important to the outcome of *Clay*, and is important to interpreting the law of wrongful discharge in Pennsylvania, since the complaint in *Clay* asserted that a claim for wrongful discharge was a common law tort. The trial court dismissed for lack of subject matter jurisdiction and concluded that the PHRC had initial jurisdiction. The Superior Court reversed and held that the availability of administrative remedies did not prevent relief based upon alleged common law rights. The Supreme Court reversed the Superior Court.

The Superior Court had concluded that there is a common law action for wrongful discharge so that the PHRA need not be the exclusive remedy. The Supreme Court, in reversing, first noted that

> [i]t should be noted that, as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy. *E.g., Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (employee cannot be discharged for serving on a jury).

*Clay*, 559 A.2d at 918. The Supreme Court in *Clay*, thus first recognized that the *Geary* decision concluded that Pennsylvania does not recognize a common law action for wrongful discharge; that the rule of *Henry* is, therefor, the controlling law.

Only when there is a clear mandate of public policy, will this rule be excepted.[3]

*Clay* cited with approval only one case, *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (mentioned in the above quote), which recognized such an exception. In *Reuther*, the Superior Court held that termination of employment for the reason that an employee fulfilled the responsible and important social and civic duty of serving on a jury is clearly a violation of public policy:

> The jury system and jury service are of the highest importance to our legal process. 'Trial by jury shall be as heretofore, and the right thereof remain inviolate....' Pa. Const. art. I, § 6, as amended by May 18, 1971. '[S]ummonses for jury service ... shall be deemed summonses of the court, and disobedience to them shall be considered the same as disobedience to any other summons of the court.' 17 P.S. § 1336 [footnote omitted]. One who fails to appear when summoned for duty may be ordered to pay for every such default a sum not exceeding thirty dollars. 17 P.S. § 1099 [footnote omitted].

*Reuther*, 386 A.2d at 120–121. The Superior Court did not blindly conclude what is clearly mandated public policy, but rather, cited to statutes enacted by the legislature to further the aims of, and to put in effect, provisions of the Pennsylvania Constitution.

Next in the short line of wrongful discharge actions based in tort to be addressed by the Pennsylvania Supreme Court is *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990). The plaintiff in *Paul* was a doctor employed for eigh-

---

**3.** Chief Justice Nix filed a concurring opinion in *Clay* which addressed the issue of wrongful discharge in more detail since "[t]he real issue in this case is whether or not the discharged employee has a common-law cause of action against the employer for wrongful discharge." *Clay*, 559 A.2d at 922. Conceding that there is a right to be free from gender based discrimination under Article I of the Pennsylvania Constitution, the Chief Justice then states "[i]n this Commonwealth, the sole vehicle to be used to protect that constitutional right is statutory." *Id.* Further, according to the Chief Justice, the Superior Court's reading of *Geary* was wrong.

The language which the Superior Court relied upon "was gratuitous *dicta* and could not possibly have created a tort cause of action for wrongful discharge. Indeed, the language in *Geary* clearly states that a cause of action for wrongful discharge in an at-will employment relationship does not exist."

Although the weight accorded a sole concurring opinion is not great, neither is it insubstantial, particularly in this instance where the writer was a participant in all the Supreme Court's wrongful discharge decisions from *Geary* to the present.

teen years by the defendant hospital. During that time, plaintiff would remove various discarded items, including medical equipment, to sell for profit or send to his native Yugoslavia. This he did with proper permission. Plaintiff was allegedly discharged, however, when he removed five refrigerators. The hospital claimed the removal was without permission; plaintiff argued he had permission. Plaintiff's argument was that the hospital should be estopped from firing him because of the previous times when he was permitted to take equipment.

The trial court dismissed all counts of the complaint except the count asserting estoppel and detrimental reliance. The jury returned a verdict for plaintiff on this count. On appeal the Superior Court, *en banc*, affirmed all counts, including the estoppel verdict, except for the dismissal of a defamation claim. The Supreme Court, in a 5–0 decision[4], reversed the *en banc* decision of the Superior Court.

The Supreme Court first analyzed its decision in *Geary*, and concluded that *Geary* "held that while some exceptions to the at-will employment doctrine *might exist*, especially in public policy areas, 'this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so.' " *Paul*, 569 A.2d at 348 (*quoting, Geary*, 319 A.2d at 180) (emphasis added). The holding in *Paul* determined that the Supreme Court in *Geary* specifically answered in the negative whether the time had come for the Court to impose restraints on the doctrine of employment at-will. *Id.*

The Supreme Court then scrutinized the majority opinion in *Clay*, which, as quoted above, held that there is no common law action for wrongful discharge, except for the most limited circumstances of a violation of a clear mandate of public policy. *Paul* also quotes, with approval, Chief Justice Nix's concurring opinion in *Clay*, wherein the Chief Justice concluded that *Geary* did not state a cause of action for

wrongful discharge and that such an action does not exist. *Id.*

The conclusion in *Paul*, regarding the action for wrongful discharge, was that

> [t]he doctrine of equitable estoppel is not an exception to the employment at-will doctrine. An employee may be discharged with [or] without cause, and our law does not prohibit firing an employee for relying on an employer's promise. In the absence of a legally cognizable cause of action, the trial court erred in submitting the issue to the jury.

*Id.* The law of Pennsylvania remains the rule of employment at will, the rule of *Henry*. While it appeared that *Geary* created a public policy exception, and subsequently, the lower courts have treated it in this manner, the recent trend has been to reaffirm the rule of employment at-will.

None of the holdings of the Supreme Court appear to soften this rule, and most recently the Superior Court, in *Yetter v. Ward Trucking Corp.*, —— Pa.Super. ——, 585 A.2d 1022 (1991), analyzed its cases in light of *Clay* and *Paul* and appears to concede this trend. The Superior Court stated, "in the few cases in which this Court has held that a claim has been stated for wrongful discharge based on the employer's violation of public policy, there existed a statute evidencing a legislative recognition of some public policy." *Yetter*, 585 A.2d at 1026. Absent a legally recognized public policy mandate that is clearly an exception to employment at-will, therefore, this Court, like the trial court in *Paul*, would be in error to allow an action for wrongful discharge to proceed. The Court thus turns its analysis to whether plaintiff has stated such an exception to the doctrine of employment at-will.

### V. *Analysis of Plaintiff's Claims.*

Plaintiff has not alleged that he was not an employee at-will. Plaintiff does not point to any contract with defendant that

---

**4.** Justices Larsen and McDermott did not participate in the consideration or decision of the action. Justice Zappala filed a concurring opinion which first stated that "[w]hile I join in Part

A of the majority's opinion regarding the issue of at-will employment, I must concur only in the result reached in Part B [dealing with the defamation count]." *Paul*, 569 A.2d at 349.

would control aspects of his employment, specifically his termination. Plaintiff's arguments, rather, claim that he fits into certain public policy exceptions. The Court, therefore, must determine if any of the public policy exceptions which plaintiff asserts are recognized in Pennsylvania.

### A. Count I: Violation of the Pennsylvania Constitution.

Count I of plaintiff's complaint alleges that he was discharged because he exercised his right of access to the courts to settle a dispute and that discharge for such a reason violates public policy since it is contrary to Article I of the Pennsylvania Constitution. Plaintiff, after first noting that no Pennsylvania Supreme Court case has yet recognized this as a matter of public policy, in support cites an unpublished memorandum from the Superior Court, *Stoltzfus v. Roy E. Ulrich Supply, Inc.*, No. 03247, Phila.1985 (affirming order of the Court of Common Pleas, 360 Pa.Super. 631, 517 A.2d 209 (1986) (decided before the Supreme Court decisions in *Clay* and *Paul* and the Superior Court's own decision in *Yetter*). The Superior Court noted that discharging an employee for serving jury duty violates public policy, and therefore, "[i]t follows as a corollary that unhindered access to our legal system is basic to our democratic form of government." This "corollary" was based upon Article I of the Pennsylvania Constitution.

The Superior Court in *Stoltzfus* did not note that in its previous decision concluding that a discharge based on jury duty violated public policy was founded in large part upon statutes providing penalties for a person's failure to ignore a call to, and the coercion which the state holds over persons called to, jury duty. In the more recent *Yetter* opinion, and as quoted above, the Superior Court noted that in the case of jury duty, "there existed a statute evidencing a legislative recognition of some public policy." *Yetter*, 585 A.2d at 1026. Plaintiff brought his case against the Borough of Marietta to settle a grievance which he had with the Borough; he brought a lawsuit by an act of free choice; he sued another as a result of no other coercive

force than a singular dispute between two minds. Plaintiff was not caught between Scylla and Charybdis as would an employee called to jury duty who, threatened with termination or statutory penalties, had no free and independent choice—either would result in harm.

As discussed in the previous section, actionable violations of public policy for wrongful discharge, are to be determined by the legislature. The majority opinion in *Clay* held that the right to be free from gender based discrimination in employment is enforceable under the PHRA, from which the majority quotes: "The opportunity for an individual to obtain employment for which he is qualified ... without discrimination because of ... sex ... is hereby recognized as and declared to be a civil right *which shall be enforceable as set forth in this act." Clay*, 559 A.2d at 919 (emphasis in original). While the majority does not state outright that a violation of the Pennsylvania Constitution is actionable only if there is implementing legislation, a reading of the concurring opinions sheds light on this. Chief Justice Nix does outright state that "[i]n this Commonwealth, the sole vehicle to be used to protect that constitutional right [protection from gender based discrimination] is statutory." *Id.* at 923. The concurring opinion of Justice Zappala objected to the majority's conclusion that a public policy protecting from gender discrimination has not yet been recognized. Rather, the passage of a constitutional amendment alone should be sufficient. *See, Id.* at 924. Taken as a whole, all three opinions strongly indicate that the majority did not believe that the Pennsylvania Constitution provided a direct cause of action for wrongful discharge. A cause of action only lies when a statute so provides.

### B. Count II: Violation of the United States Constitution.

Count II of plaintiff's complaint is the same as Count I only it is based on the First Amendment of the United States Constitution. The major basis for plaintiff's argument is *Novosel v. Nationwide Insur-*

*ance Co.*, 721 F.2d 894 (3d Cir.1983) in which the Third Circuit decided that discharging an employee for his refusal to participate in the lobbying efforts of, and subscribing to certain political objectives of, his employer violated the First Amendment which the courts of Pennsylvania would find is contrary to public policy. The Third Circuit, however, had to speculate on what direction the Pennsylvania Supreme Court would take since *Novosel* was decided before *Clay* and *Paul:* "While there are no Pennsylvania cases squarely on this point, we believe that the clear direction of the opinions promulgated by the state's courts suggests that" the actions would violate public policy. *Id.* at 900. The more recent cases of the Supreme Court and the Superior Court's decision in *Yetter, supra,* clearly show a reluctance to find a public policy mandate unless it is expressed as such by the legislature. As with Count I, unless there is this clear expression from the legislature or other state body, and absent any indication to the contrary from the Pennsylvania Supreme Court, the allegations of Count II do not afford plaintiff a cause of action.

C. Count III: Violation of Public Policy as Expressed in "Whistleblower" Statutes.

■ Plaintiff's final basis for finding a public policy exception is based upon the Pennsylvania Whistle Blower Law, 43 Pa. S.A. § 1421 *et seq.,* as an expression of "the clear public policy of Pennsylvania with regard to protecting certain types of whistle blowers." Plaintiff's Memorandum in Opposition, at 7. Plaintiff is not claiming that the law expressly covers himself, but rather, it is an expression of intent to protect those like him. *Id.*

Defendant argues that the statute covers only public employees. Plaintiff's memorandum in opposition, at 7, quotes the definition of employee as a person working for a public body or

[a]ny other body ... which is funded in any amount by or through [the] Commonwealth or political subdivision authority or a member or employee of that body.

Plaintiff argues that the general purpose of the law is to protect public employees or private sector employees who work for publicly funded businesses. Since defendant receives money from "the government" because of its contracts with the Navy and INS, "the money it received for its various government contracts removes the type of immunity that would normally be afforded a purely private employer." *Id.* at 8. It should be noted that the definition from which plaintiff quotes specifically refers to funding provided by the Commonwealth, that is the Commonwealth of Pennsylvania, whereas in plaintiff's argument, he refers only to "the government". This must be because the funding to which plaintiff is alluding is federal funding, not state, which is evident from plaintiff's reference to the contracts with the Navy and INS, two areas of government in which the states do not have any powers as the United States Constitution vests such powers solely in the federal government, and therefore, a state would not be providing funding. Even conceding such state fiscal spending, contracts for low light level cameras cannot possibly give rise to the funding of a company.

Regardless, since the legislature specifically limited the scope of the Whistleblower Law to public, or quasi-public, employees, abrogation of the employment at-will doctrine must not have been intended. The Court agrees with defendant: "The fact that the Whistleblower Law does not establish a cause of action for "whistleblowers" in the private sector is a clear indication of the legislature's intent to exclude claims such as those advanced by plaintiff in the present case." Defendant's Memorandum in Support, at 17.

D. Plaintiff's Complaint Discloses a Plausibly Legitimate Reason for His Termination.

■ *Geary* has been interpreted as providing a common law cause of action for wrongful discharge. The Pennsylvania Supreme Court writing in *Geary,* however, specifically stated its sole holding: "We hold only that where the complaint itself

discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Geary*, 319 A.2d at 180. As pointed out in defendant's memorandum in support,

> Mr. Wagner admits that he informed General Electric's customers of "the faults, flaws, weaknesses or inadequacies of the product manufactured by [defendant]". Plaintiff also admits that he provided a "critical and derogatory analysis ..." of the Company's products. Plaintiff also concedes that he informed customers about "the shoddy equipment manufactured by [defendant]". These admissions disclose a plausible and legitimate reason for his termination.

Defendant's Memorandum in Support, at 16 (*citing* Complaint, at ¶¶ 27–29). Plaintiff's actions are not compatible with the aims of defendant's business and contrary to the job of an Administrator for Market Planning—International, or as Product Marketing Specialist, or as Technical Application Liaison, Government Sales, all of which positions plaintiff held. Complaint, at ¶ 6. An employer, unless constrained by some law, has a right to keep his house in the order he desires. Part of the discretion that entails is the discretion to make informed or uninformed, wise or unwise, business decisions which include, *inter alia*, employment decisions. If plaintiff was not fulfilling his duties and was acting contrary to the interests of his employer by undermining confidence in the defendant's products, it cannot be a violation of public policy to discharge plaintiff, particularly when those reasons appear on the complaint itself.

VI. *Conclusion.*

For the foregoing reasons, defendant's Motion for Leave to File Summary Judgment, and Motion for Summary Judgment will be granted.