**Ronald DEITERS, Plaintiff,**

v.

**HOME DEPOT U.S.A., INC., Defendant.**

**Nos. 3:92–0485, 3:92–0706.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 22, 1993.

Charles R. Ray, Ray & Housch, Nashville, TN, for plaintiff.

Michael L. Dagley, Charles W. Cook, III, Farris, Warfield & Kanaday, Nashville, TN and John F. Wymer, III, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, for defendant.

## *MEMORANDUM*

ECHOLS, District Judge.

Presently pending before this Court is Defendant's Motion for Summary Judgment to which Plaintiff has responded. For the reasons more fully outlined herein, the Defendant's Motion for Summary Judgment is GRANTED. This case is accordingly DISMISSED.

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the

evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley,* 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. If so, summary judgment dismissal is inappropriate.

Plaintiff is a former employee of Home Depot, the Defendant. Home Depot has discharged him on two separate occasions. After the first discharge, Plaintiff was reinstated at his own request. However, he was reinstated at a lesser level of responsibility. Plaintiff brought a state court action against Home Depot for wrongful discharge, which was dismissed on Defendant's motion for summary judgment. Plaintiff filed a notice of appeal in that case and, two days later, was again discharged.

It is the second discharge which is the subject of the instant lawsuit. Although Plaintiff was an employee at will, he sues Home Depot for retaliatory discharge, claiming that he was discharged because he had appealed the judgment of the first lawsuit and that such discharge violates the "public policy" of Tennessee. Plaintiff also claims that his discharge was additionally calculated to prevent Plaintiff from receiving certain employee benefits which would have vested within approximately five months. Therefore, Plaintiff contends that his dismissal also violates § 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.[1]

Defendant responds that the discharge was in no way motivated by Plaintiff's decision to appeal the summary judgment dismissal or by a desire to deprive Plaintiff of employee benefits. Instead, Defendant contends that Plaintiff was discharged for se-cretly tape recording two meetings with management personnel.

Clearly, there is a genuine dispute of material fact with regard to the reason for the discharge. However, in its Motion for Summary Judgment, Defendant asks this Court to assume for purposes of the motion that Plaintiff's discharge was motivated by his decision to appeal the judgment of the first case. Defendant contends that even under those facts, Plaintiff states no actionable claim because the dismissal does not fall within the narrow public policy exception to Tennessee's at-will rule. With regard to the allegation that the discharge violated § 510 of ERISA, Defendant contends that Plaintiff has submitted insufficient evidence to withstand this summary judgment motion.

■ In Tennessee, a contract of employment for an indefinite term is generally a contract at will and may be terminated by either the employer or the employee at any time. *Nelson Trabue, Inc. v. Professional Management–Automotive, Inc.,* 589 S.W.2d 661, 663 (Tenn.1979); *Little v. Fed. Container Corp.,* 61 Tenn.App. 26, 452 S.W.2d 875, 877 (1969). This means that in the absence of an express contract of employment, an employee may be discharged for good reason, for bad reason, or for no reason at all. *Clanton v. Cain–Sloan Co.,* 677 S.W.2d 441, 443 (Tenn.1984); *Whittaker v. Care–More, Inc.,* 621 S.W.2d 395, 396 (Tenn.Ct.App.1981). It has already been determined that Plaintiff was an at-will employee of the Defendant. *Deiters v. Home Depot, Inc.,* 1992 WL 113447 (Tenn.Ct.App.1992).

■ Tennessee courts have recognized a limited exception to the at-will doctrine. *Clanton v. Cain–Sloan Co.,* 677 S.W.2d 441 (Tenn.1984). In that case, the plaintiff sued for retaliatory discharge, claiming that he was fired for filing a workers' compensation claim. *Id.* at 444–445. Tennessee's Supreme Court held that the creation of a cause of action for retaliatory discharge was necessary to prevent the destruction of the important public policy behind the workers' com-

---

**1.** Plaintiff filed his retaliatory discharge claim in state court in Tennessee. Defendant removed that case to this Court. Plaintiff subsequently filed his ERISA claim in this Court, and the two cases were consolidated.

pensation system. The Court reasoned that the Tennessee legislature necessarily intended that no employer should be permitted to avoid its statutory duty under the workers' compensation statute by merely discharging the employee. *Id.*

However, this public policy exception is a narrow one, and must be applied sparingly, so that the exception will not consume the rule. *Chism v. Mid–South Milling Co.,* 762 S.W.2d 552, 556 (Tenn.1988). This is illustrated by another case in which the Tennessee Supreme Court held that an at-will employee could not maintain a retaliatory discharge claim against her former employer where she alleged that she was fired because she testified in an unemployment compensation case involving another employee. *Harney v. Meadowbrook Nursing Center,* 784 S.W.2d 921 (Tenn.1990). The court explained:

> *Clanton* did not create a new exception to the [employment-at-will] rule. The Court merely recognized that implicit within the provisions of [the Tennessee Workers' Compensation Act] a cause of action existed to prevent an employer from utilizing retaliatory discharge as a device to defeat the rights of an employee under the Workers' Compensation Law. The decision was not intended as a license for the courts to enlarge on the employee-at-will rule or create other exceptions to public policy or the common-law in the absence of some constitutional or legislative precedent.

*Id.* at 922.

Indeed, in *Watson v. Cleveland Chair Co.,* 789 S.W.2d 538 (Tenn.1989), the Tennessee Supreme Court reversed a lower court's expansion of the public policy exception, explaining that such expansion is a legislative matter.

> All questions of policy are for the determination of the legislature and not for the courts.... Where courts intrude into their decrees their opinion on questions of public policy, they in effect constitute the judicial tribunals as lawmaking bodies in usurpation of the powers of the legislature.

*Id.* at 540–41 (citing *Cavender v. Hewitt,* 145 Tenn. 471, 239 S.W. 767, 768 (1921)). Tennessee courts, steadfastly upholding the em-

ployment at-will doctrine, have recognized that

> [t]here must be protection from substantial impairment of the very legitimate interests of the employer in hiring and retaining the most qualified personnel available or the very foundation of the free enterprise system could be jeopardized.

*Whittaker v. Care–More, Inc.,* 621 S.W.2d 395, 396 (Tenn.Ct.App.1981).

■ In order to prevail on such a claim under the public policy exception to Tennessee's at-will doctrine, a plaintiff must show that: (1) the public policy is clear, well-defined, and unambiguous; (2) the discharged employee would have been subjected to criminal or civil exposure had he or she not performed or refused to perform the act which resulted in his or her termination; and (3) the violation of public policy was a substantial factor in the discharge decision. *Chism v. Mid–South Milling Co.,* 762 S.W.2d 552, 556 (Tenn.1988).

Plaintiff must first show that a clearly defined public policy was violated. *Chism,* 762 S.W.2d at 556. That policy must be evidenced by a "clear and unambiguous constitutional, statutory or regulatory provision." *Id. Accord Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 899 (Tenn.1992); *Whittaker v. Care–More, Inc.,* 621 S.W.2d 395, 396 (Tenn.Ct.App.1981).

■ The basis of Plaintiff's claim is Article I, § 17 of the Constitution of the State of Tennessee, which provides,

> That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct.

Tenn. Const., art. I, § 17. The issue becomes whether that provision of the Tennessee Constitution creates a clear and unambiguous public policy exception to the employment at-will doctrine.

As a general rule, constitutional restrictions limit actions by the government, as opposed to actions by private individuals. Indeed, courts have uniformly applied Article I, § 17 only to governmental action, not to private action. *See, e.g., Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128 (6th Cir.1986); *Jones v. Five Star Eng'g, Inc.,* 717 S.W.2d 882 (Tenn.1986). Indeed, a Tennessee court refused to recognize a similar constitutionally-based public policy exception to the employment at-will doctrine for just that reason. In that case, the Tennessee Court of Appeals affirmed a grant of summary judgment against an at-will employee who had sued his former employer for wrongful discharge, claiming that he was fired for exercising his right to free speech as guaranteed by the federal and Tennessee constitutions. *Rigsby v. Murray Ohio Mfg. Co.,* 1991 WL 95710 (Tenn.Ct.App.1991). The court rejected his argument, stating:

> Mr. Rigsby argues that freedom of speech is the public policy of this state, guaranteed by both the state and federal constitutions, and that he cannot be fired for exercising that right. We note, however, and we think Mr. Rigsby would agree, that the right to exercise first amendment privileges is not absolute. For instance, he does not, as a general rule, have a right to use private property as a forum for expressing his beliefs.... We do not think firing an at-will employee for exercising his right to free speech on his employer's premises during working hours violates the public policy of this state. Public policy does not require that an employee be given a cause of action when he is terminated for doing what the employer could prohibit.

*Rigsby,* 1991 WL 95710 at *2 (citations omitted).

Because there is no Tennessee Supreme Court decision directly on point, this Court must predict how that court would rule on this issue. In making this prediction, this Court may rely upon all available data, "including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule ..." *Grantham*

*and Mann, Inc. v. Am. Safety Prod., Inc.,* 831 F.2d 596, 608 (6th Cir.1987).

Other states addressing similar public policy claims have consistently held that at-will employees who are terminated for suing their employer may not claim that such termination violated public policy. In an Illinois case, the plaintiff brought a similar wrongful discharge suit, claiming that the "open courts" provision in the Illinois constitution created a public policy exception to the at-will doctrine. *Kavanagh v. KLM Royal Dutch Airlines,* 566 F.Supp. 242 (N.D.Ill. 1983). Plaintiff alleged that he had been fired for retaining an attorney to represent him in a wage dispute with the employer. The court dismissed the case pursuant to Federal Rule of Civil Procedure 12(b)(6), stating:

> The issue before this court, therefore, is narrow: can plaintiff, based on these pleadings, prove some set of facts establishing that his discharge was in violation of a clearly mandated public policy? The complaint states that the public policy violated by [the defendant] is the one assuring that "citizens of the United States and Illinois shall have the right to retain counsel to represent them in civil matters and to have access to a court of law to protect their property." There is no question that the right to counsel and to free access to the courts are important public policies. However, these freedoms usually are expressed in terms of limitations on government, not on private parties. The invocation of the public interest in the effectuation of these policies to create new common law rights would be unprecedented; a party does not violate another party's right to counsel or to free access to the courts by taking measures, even though retaliatory and spiteful in nature, which lawfully are available to him simply because resort to these measures somehow penalizes the other party for suing. For instance, if a squabble developed between merchants who regularly conducted business with one another, although they were not under contract to do so, would one of the merchants commit a tort if he told the other that they would no longer do business if suit were filed?

Even if the court limited Plaintiff's theory to the employment context, it would metamorphose the supposedly narrow [public policy] exception ... into the monster that swallowed the employment-at-will rule. Whenever a dispute between an employer and an at-will employee threatens to culminate in the employee's discharge, the employee, simply by retaining an attorney and threatening to sue, could procure that which is unavailable to him through contract—employment security. [Defendant] persuasively argues that inherent in the employment-at-will relationship it had with plaintiff was an understanding that the organization and its managers function more effectively in an atmosphere of trust and cooperation; when this harmony is destroyed, regardless of who is at fault, it is in the interest of all concerned to terminate their relationship. The rule advocated in the complaint ironically would penalize a company for discharging an at-will employee when the employment relationship has completely soured. Plaintiff cannot stake his claim on the allegation that [the defendant] by discharging him violated general public policies in favor of the right to counsel and the right to free access to the courts.

*Id.* at 244.

Likewise, the Seventh Circuit Court of Appeals affirmed the dismissal of a suit in which the plaintiff alleged that he was discharged because he had consulted an attorney after receiving a letter of reprimand from his employer. That plaintiff based his public policy claim on Article I, § 9 of the Wisconsin constitution which protects "access to the courts." *Beam v. IPCO Corp.*, 838 F.2d 242, 247 (7th Cir.1988). The court found that the constitutional language did not specifically protect an employee who brings, or threatens to bring, legal action against his or her employer. The court rejected the plaintiff's public policy claim, finding that the Plaintiff's discharge did not violate any public policy reflected in the constitution or statutes of the state of Wisconsin. *Id.* at 247.

In *Whitman v. Schlumberger Ltd.*, 793 F.Supp. 228 (N.D.Cal.1992), the issue was whether the termination of an employee who threatened and ultimately filed a lawsuit against his employer violated public policy. Relying on several California constitutional and statutory provisions, Plaintiff claimed that his termination violated the state's public policy allowing access to courts and making that access free from retaliation. The Court rejected Plaintiff's claim, stating that "[p]laintiff has cited numerous constitutional and statutory provisions, but none serve to clearly identify and support a public policy favoring free access to courts without the fear of reaction by the defendant." *Id.* at 232.

Similarly, the Illinois Court of Appeals held that an at-will employee not covered by the Illinois Workers' Compensation Act failed to state a claim for retaliatory discharge when he was terminated for bringing a lawsuit against his employer for injuries suffered while working. *Mitchell v. Deal*, 241 Ill.App.3d 331, 182 Ill.Dec. 75, 609 N.E.2d 378, *appeal denied*, 151 Ill.2d 566, 186 Ill.Dec. 384, 616 N.E.2d 337 (1993). The court held that "in the absence of any specific statute enacted for the benefit of injured employees such as [plaintiff] ... we cannot find that plaintiff[ ] ha[s] stated a clearly mandated public policy. The right plaintiff[ ] seek[s] to vindicate here is personal and private, not affecting the citizens of Illinois collectively." *Id.*, 609 N.E.2d at 380.

In another case, the plaintiff was fired after she sued her employer; plaintiff based her retaliatory discharge claim on Article 19 of the Maryland constitution which contains language similar to Article I, § 17 of the Tennessee constitution. *Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 588 A.2d 760 (1991). The court rejected that claim stating:

absent a statute expressing a clear mandate of public policy, there ordinarily is no violation of public policy by an employer's discharging an at will employee in retaliation for that employee's suing the employer. Where the at will employee's claim involves disputed compensation or other benefits the employer is not required either to retain a discontented employee or to risk a[ ] [retaliatory] discharge suit. Rather, the at will employee is required to

forego suit or risk discharge.... There is no clear mandate of public policy which would make actionable [the employer's] discharge of [the plaintiff] if that discharge were motivated solely by [the plaintiff's] initial claims against [the employer].

*Id.* at 765–76. *Accord Abrams v. Echlin Corp.,* 174 Ill.App.3d 434, 123 Ill.Dec. 884, 528 N.E.2d 429 (1988) (holding that an at-will employee who was discharged after threatening to take legal action to secure payment of wages had not stated a retaliatory discharge claim under the public policy exception); *Buechele v. St. Mary's Hosp. Decatur,* 156 Ill.App.3d 637, 109 Ill.Dec. 83, 509 N.E.2d 744 (1987) (finding no public policy exception under Illinois law where at-will employee was terminated for suing his employer for defamation and intentional infliction of emotional distress); *Buysse v. Paine, Webber, Jackson & Curtis, Inc.,* 623 F.2d 1244 (8th Cir.1980) (holding that under Minnesota law, employer was within its rights when it discharged an at-will employee who sued the employer for fees); *Becket v. Welton Becket & Assoc.,* 39 Cal.App.3d 815, 114 Cal.Rptr. 531, 534 (1974) (finding "no strong public policy ... which would insulate an employee who is also a stockholder against discharge from his employment where he has undertaken to file suit and litigate against the management of the employing entity"); *Meredith v. C.E. Walther, Inc.,* 422 So.2d 761, 763 (Ala.1982) (holding that "absent other considerations, an employee at will who sues his employer can be discharged"); *Alexander v. Kay Finlay Jewelers, Inc.,* 208 N.J.Super. 503, 506 A.2d 379, *appeal denied,* 104 N.J. 466, 517 A.2d 449 (1986) (holding that discharge of at-will employee for suing the employer over a salary dispute did not state a cause of action for retaliatory discharge under the public policy exception).

This Court is persuaded by the reasoning of the above-cited cases and concludes that Article I, § 17 does not create a clear and unambiguous public policy exception to the employment at will doctrine. Tennessee's constitution limits only governmental actions; private entities are not so bound. Even if the constitution did apply to private entities, Article I, § 17 does not clearly and unambiguously create a public policy which would

prevent the discharge of at-will employees who sue their employers. Litigation between an employer and employee tends to result in an acrimonious and noncooperative working relationship. When such a relationship threatens the effectiveness of an organization, an employer must be free to remedy the situation through termination.

■ Under the second element of the public policy exception, the employee must demonstrate that he or she was terminated for refusing to perform (or not perform) acts which would subject the employee to personal exposure to civil and criminal sanctions. *Chism v. Mid–South Milling Co.,* 762 S.W.2d 552, 556 (Tenn.1988). "[A] cause of action for retaliatory discharge arises when an at-will employee is terminated solely for refusing to participate, continue to participate, or remain silent about illegal activities." *Watson v. Cleveland Chair Co.,* 789 S.W.2d 538, 544 (Tenn.1989). Clearly, that is not the case here. Plaintiff's appeal, or failure to appeal, the summary judgment dismissal of his case could not have resulted in his exposure to civil or criminal liability.

The final factor which Tennessee courts consider in analyzing a claim for violation of public policy is whether the violation of the public policy was a "substantial factor" in the employee's termination. *Anderson v. Standard Register Co.,* 857 S.W.2d 555 (Tenn. 1993); *Chism,* 762 S.W.2d at 556. However, this factor is only addressed if the Court determines that the Plaintiff's discharge contravenes a clear, well-defined and unambiguous public policy, and that Plaintiff was under a legal duty to engage in the conduct for which he was discharged. Because this Court has found that no such policy exists in this case, it need not address the final factor.

Plaintiff's complaint additionally alleges that his discharge was motivated by a desire to prevent him from receiving the "rights and benefits to which he was entitled under the provisions of the employee welfare and benefit plans offered and maintained by the Defendant" and therefore violates § 510 of ERISA. (Complaint, ¶ 12.)

Section 510 of ERISA provides, that "[i]t shall be unlawful for any person to discharge

... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140 (1988). "The legislative history reveals that the prohibitions [of that section] were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980).

In applying § 510, the Sixth Circuit Court of Appeals has found it

"appropriate to employ a ... burden-shifting approach [where] there is no direct evidence of the employer's motivation. ... [T]o avoid summary judgment on a [§ 510] claim, a plaintiff must show the existence of a genuine issue of material fact that there was: '(1) prohibited employer conduct (2) taken for the specific purpose of interfering (3) with the attainment of any right to which the employee may become entitled.' "

*Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir.1992) (citations omitted) (quoting *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3rd Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987)).

One of the elements a plaintiff must show is that the "employer had a specific intent to violate ERISA." *Humphreys*, 966 F.2d at 1043 (quoting *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir.1991)). However, a plaintiff need not prove that the "employer's sole purpose in discharging him was to interfere with his pension benefits." Instead, the plaintiff need only prove "that it was a 'motivating factor' in the decision." *Humphreys*, 966 F.2d at 1043.

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to " 'introduce admissible evidence of a legitimate, nondiscriminatory reason for its challenged action.' " *Id.* (quoting *Gavalik*, 812 F.2d at 853). If the employer demonstrates a legitimate reason for its action, the presumption of wrongdoing then disappears, and the plaintiff must either show "that the interference with pension benefits was a motivating factor in the employer's actions" or show that the employer's proffered reason is not credible. *Humphreys*, 966 F.2d at 1043.

■ Plaintiff has met his initial burden of producing evidence to support each of the elements of his *prima facie* case. Plaintiff proved that he was discharged from Home Depot and that his benefits ended as a result. Additionally, Plaintiff has produced evidence that he was eighty percent vested in his retirement plan at the time of his discharge, and that he would have been fully vested within a few more months. Obviously, Plaintiff's discharge prevented his full vesting. Plaintiff also states that his discharge prevented him from participating in Home Depot's Employee Stock Option Program ("ESOP") and in its life, medical, and dental insurance plans.

■ In response, Defendant has met its burden of demonstrating a legitimate, non-discriminatory reason for the discharge, i.e., Plaintiff's secret tape recording of his meetings with management personnel.[2] Under the burden-shifting analysis, Plaintiff has failed to rebut with evidence that these reasons were pretextual.

Under Sixth Circuit case law, the mere loss of benefits by an employee or the cost savings by an employer, without more, do not

---

2. The revised termination notice which Plaintiff received stated:

Facts have recently come to light to senior management regarding [Plaintiff's] secretly taping of conversations with management. This is resulting in termination due to violating standards of conduct for employees. The conduct of secretly taping conversations with management without their consent or knowledge is improper behavior and [is not] conducive to the spirit of cooperativeness with Home Depot.

Day Deposition, Exhibit 3. In addition, Home Depot has submitted the affidavit of Donald P. McKenna, who was Vice President of Human Resources at the time of Plaintiff's discharge. In that affidavit, Mr. McKenna states that "[t]he only reason for discharging Mr. Deiters was his tape recording of meetings with Home Depot management without their consent or knowledge." Defendant's Memorandum in Support of its Motion for Summary Judgment, Exhibit A.

"prove the requisite intent by the path of pretext." *Id.* (quoting *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 239 (4th Cir.1991)). To withstand a motion for summary judgment, a plaintiff must prove more than just the loss of benefits or monetary savings for his employer.

> That "something more" which must be shown is a causal link between pension benefits and the adverse employment decision. In order to survive [a defendant's] motion for summary judgment, plaintiff must come forward with evidence from which a reasonable jury could find that [the defendant's] desire to avoid pension liability was a determining factor in plaintiff's discharge.

*Humphreys,* 966 F.2d at 1044 (quoting *Nixon v. Celotex Corp.,* 693 F.Supp. 547, 555 (W.D.Mich.1988)).

Any person who is discharged from his or her job loses employment benefits; that loss alone does not constitute a claim under § 510 of ERISA. Because Plaintiff has failed to meet his burden of proof, Plaintiff's ERISA claim is DISMISSED.

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED, and this case is DISMISSED.