# CIRCUIT COURT OF ROCKINGHAM COUNTY

Keith Shifflett

v.

Phillip Lewis
and Dollar General Corp.

August 12, 1998

Case No. (Law) 11254

BY JUDGE JOHN J. MCGRATH, JR.

This matter comes before the court on Defendants' demurrer to the Amended Motion for Judgment. Under well-established principles, all factual allegations pleaded by the plaintiff, as well as facts fairly inferred from the allegations, are admitted for the purpose of considering the demurrer. *See, e.g., Concerned Taxpayers v. County of Brunswick*, 249 Va. 320 (1995). The Dollar General Corporation owns and operates a store in Harrisonburg, Virginia, where Plaintiff Keith Shifflett was employed as an assistant manager. On September 9, 1997, while on the job, Shifflett was injured while helping to unload a truck owned by Ryder, Inc., a truck carrier which regularly made deliveries to the Dollar General store in Harrisonburg. Thereafter, Shifflett made several requests of Dollar General for information regarding a claim under the Virginia Workers' Compensation Act (Va. Code §§ 65.2-100 to 65.2-1310). Shifflett received no cooperation from Defendants and was discouraged from filing a claim. Shifflett also inquired of Dollar General of his rights against Ryder, Inc., for personal injury and was discouraged from pursuing this remedy as well. Shifflett was eventually discharged by Defendant Phillip Lewis, a district manager for Dollar General, which Shifflett alleges was a result of this incident.

*Count I*

In Count I of his Amended Motion for Judgment, Plaintiff alleges that he was discharged by Defendants Lewis and Dollar General, Inc., because he consulted an attorney. Having received no response from his employer concerning how his medical bills would be paid and how he would be compensated for missing work because of his injury, Shifflett made an appointment with an attorney to discuss his rights under the Workers' Compensation Act and his legal rights against Ryder, Inc. Plaintiff had received permission from his immediate supervisor to take time off to keep this appointment, but Defendant Lewis directed Shifflett not to keep the appointment.

The allegations in the Amended Motion for Judgment are chilling in their recitation of the course the employer allegedly took to prevent Plaintiff from learning his legal rights and pursuing a claim for legal redress:

6. Defendant Phillip Lewis, a district manager, while acting within the scope of his employment with Dollar General Corporation, had learned of Plaintiff's appointment with an attorney regarding said accident and came to Harrisonburg, Virginia, and met with Plaintiff just prior to Plaintiff's scheduled appointment to see an attorney.

7. Defendant Lewis told Plaintiff that he was not ever to meet with an attorney regarding the accident he sustained at the Dollar General Store in Harrisonburg, Virginia, not at his scheduled appointment time, and not in the future. Plaintiff was told that he could never meet with an attorney regarding his injury at the Dollar General Store, and if he did meet with an attorney at any time regarding his injury, he would be terminated.

8. Plaintiff advised Phillip Lewis that notwithstanding Lewis' command that Plaintiff never see an attorney regarding his legal rights as a result of the accident, he was going to meet with an attorney to discuss his rights and responsibilities resulting from his injury on the job, both worker's compensation and a possible direct action against Ryder, Inc. Philip Lewis then terminated Plaintiff as he had previously threatened he would do if Plaintiff sought legal advice regarding his injury.

9. In addition, Phillip Lewis called Plaintiff, while at his home recovering from his injuries on or about September 13, and spoke to him regarding the accident. Defendant Lewis specifically told him not

to see an attorney regarding said injury, and if he did not see an attorney, a promotion and raise could be in the offering.

Motion for Judgment ¶¶ 6-9. When Shifflett proceeded to meet with the attorney, Lewis terminated his employment. Shifflett further alleges:

[D]efendants violated the public policy of Virginia which allows persons, if capable financially, to retain counsel to ascertain their legal rights; which allows persons, if capable, to retain hired counsel in a civil case; which allows persons, if capable, to access an attorney so that one might have meaningful access to the Courts.

Motion for Judgment ¶ 10. Shifflett claims this policy is established in the Virginia Constitution and the 1950 Code of Virginia, as amended.

A. *Legal Basis of Count I*

Though Plaintiff does not specifically refer to *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985), it is clear that he relies in his suit on what has become well known as the *Bowman* exception to the employment-at-will doctrine. There has been an incredible amount of judicial construction (or more appropriately, constriction) of the *Bowman* rule in subsequent opinions from the Supreme Court and the lower courts, but *Bowman* still remains the ultimate source of authority in this type of litigation.

Before exploring the judicial gloss that has been put on *Bowman*, it is helpful to examine the facts and holding of *Bowman*. In *Bowman*, two bank employees who owned stock in their employer-corporation were terminated from their at-will employment when they complained to the Bank of the coercion that had been applied to them to unwillingly vote their stock in favor of a merger which they opposed. The Supreme Court acknowledged the continued validity of the employment-at-will doctrine in Virginia but agreed with the judicial holdings of twenty other states which have permitted a tort action for wrongful discharge by an at-will employee where the employee was "discharged in violation of an established public policy." *Id.* at 539. The Court in *Bowman* held:

[I]n the present cases, the retaliatory discharges were based on violations of public policy by the defendants. Code § 13.1-32[1]

---

[1] Now § 13.1-662.

conferred on these plaintiffs as stockholders the right to one vote for each outstanding share of stock held, on each corporate matter submitted to a vote at a meeting of stockholders. This statutory provision contemplates that the right to vote shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management. In order for the goal of the statute to be realized and the public policy fulfilled, the shareholder must be able to exercise this right without fear of reprisal from corporate management which happens also to be the employer. Because the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation.

Consequently, applying a narrow exception to the employment-at-will rule, we hold that the plaintiffs have stated a cause of action in tort against the Bank and the named directors for improper discharge from employment.

*Id.* at 540. Interestingly, the statute cited as a basis for the court's decision in *Bowman* does not explicitly state that shareholder votes must be "free of duress and intimidation," and it certainly contains no explicit prohibition of one group of stockholders placing "pressure" or "economic pressure" or "coercion" on other shareholders to achieve a desired outcome. Rather, according to the Supreme Court, the statute "contemplates" this idea of volitional voting.

Since the time of *Bowman*, the courts have narrowed considerably this exception to employment-at-will. In *Miller v. SEVAMP, Inc.*, 234 Va. 462 (1987), the court refused to find a public policy enforcing provisions of an employer's policy manual. *Id.* at 468. In *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94 (1996), the court found that the code sections upon which the plaintiff based his claim did not articulate a public policy, nor did the plaintiff specify a particular statute violated by the employer. *Id.* at 98. The court distinguished the *Bowman* decision, noting that in *Bowman*, the plaintiff had "identified specific statutes in which the General Assembly had established public policies." *Id.*

More recently, a federal court applying Virginia law in *Williamson v. Virginia First Savings Bank*, VLW 983120 (E.D. Va. Apr. 27, 1998), found that a *Bowman* claim could not be based on a public policy articulated in the Virginia Constitution where that policy is also codified in the Virginia Human Rights Act (VHRA) (Va. Code §§ 2.1-714 to 2.1-725). There, the plaintiff had

brought a *Bowman* claim based on the Virginia Constitution's protection from sex discrimination (Va. Const. Art. I, § 11), a public policy also articulated in the VHRA (Va. Code § 2.1-715). However, the court found that § 2.1-725(D) of the VHRA limits any action based on a violation of that Act to the remedies provided therein. *Williamson*, VLW 98310 at 8. The court further held that because the VHRA precludes *Bowman* claims, the Virginia Constitution could not serve as the basis for such claims. *Id.* Otherwise, the court reasoned, "a plaintiff would not be 'exclusively limited' to bringing a statutory cause of action as the plaintiff would be able to substitute the VHRA as a public policy source with other statutes." *Id.* at 9-10. A similar result was reached by the U. S. District Court for the Eastern District of Virginia in *McCarthy v. Texas Instruments, Inc.*, 1998 WL 166549 (E.D. Va. Apr. 7, 1998).

The irony of the current state of the law is hard to ignore; after the explosion of ensuing *Bowman* litigation and the various limits which have been placed on the exception by the legislature and the courts, the only group of employees who clearly seem to be isolated from the application of the "employment-at-will doctrine" are employees who own shares of stock in a corporation for whom they work and who desire to vote those shares in an annual or special shareholders' meeting contrary to the desires of the management control group.

In the present case, Plaintiff claims that Article I, § 11, of the Virginia Constitution, which guarantees Due Process of Law, includes the "right to retain and/or consult with counsel in a civil matter so that one may have meaningful access to the courts." Motion for Judgment ¶ 10a. Plaintiff further claims that §§ 65.2-713 and 65.2-714 of the 1950 Code of Virginia, as amended, providing for attorneys' fees in workers' compensation cases, include "the right to have an attorney if one chooses to retain one." Motion for Judgment ¶ 10b.

## B. *Public Policy Within the Virginia Constitution*

Common sense would indicate that there is no higher source of an articulated "public policy" than the Constitution of the Commonwealth of Virginia. If a "public policy" worthy of protection can be found in an act of the legislature, *ipso facto*, the Constitution of the Commonwealth, which is the organic document by which the people of the Commonwealth validate the existence, powers, and responsibility of the government itself, must be a source from which a clearly articulated public policy may be found. This Court does not read the Federal Courts' holdings in *Williamson* and *McCarthy*, *supra*, to prohibit a *Bowman* claim based on the Virginia Constitution, so long as the

remedy has not been prescribed elsewhere by the legislature. The question, however, is whether the Virginia Constitution contains a clearly-articulated public policy which can be the basis of a *Bowman*-type claim.

In the first instance, it would seem that in a nation and Commonwealth founded upon the principals of "the Rule of Law," it would be axiomatic that its citizens would have the basic right to consult an attorney without fear of reprisal from the government, an employer, or any fellow citizen. As our revered founding father Thomas Jefferson stated in a letter to M. Limogin on December 22, 1787, "Ignorance of the law is no excuse in any country. If it were, the laws would lose their effect because it can always be pretended." Given the overriding importance in a democracy for a citizen to *know and obey* the law, it would seem clear that any citizen must have a right to consult with an attorney to know the law and to learn of his or her rights under the law. Because denying a working person of the right to consult a lawyer with the threat of losing his or her job seems antithetical to the fundamentals of a nation which operates by the rule of law, it would seem that there must be such a right and a means of protecting that right.

The first line of argument to such a protection would appear to be the protections of speech and association which play such an important rule in our state and federal Bill of Rights. Earlier in this century, the Supreme Court of the United States relied upon these constitutional rights to strike down Virginia statutes and regulations which restricted workers' rights to consult attorneys. *See, e.g., Brotherhood of Railroad Trainmen v. Virginia, ex rel. Va. State Bar,* 377 U.S. 1 (1964) (Black, J.); *N.A.A.C.P. v. Button,* 371 U.S. 415 (1963). As Justice Black wrote in *Brotherhood of Railroad Trainmen, supra*:

> A State could not, by invoking the power to regulate the professional conduct of attorneys, infringe in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest. *Laymen cannot be expected to know how to protect their rights when dealing with practiced and carefully counseled adversaries,* cf., *Gideon v. Wainwright,* 372 U.S. 335, and for them to associate together to help one another to preserve and enforce rights granted them under federal laws cannot be condemned as a threat to legal ethics. *The State can no more keep these workers from using their cooperative plan to advise one another than it could use more direct means to bar them from resorting to the courts to vindicate their legal rights. The right to petition the courts cannot be so handicapped.*

*Id.* at 5 (emphasis added).

The difficulty with this approach is that it has been widely held that the Virginia Constitution is a restriction on the acts of *government*, not a restriction on the acts of private citizens. *See, e.g., Town of Madison v. Ford*, 255 Va. 429 (1998) ("the Virginia Constitution … establish[es] the limits of governmental action"); *Dean v. Palolicelli*, 194 Va. 219 (1952) ("The office and purpose of the constitution is to shape and fix the limits of governmental activity.") Since there is no allegation that any governmental activity is being exercised by or through the employer, it is not possible in this case to base a wrongful termination claim, with nothing more, on the Bill of Rights of the Virginia Constitution.

Although there appears to be no Virginia precedent on this issue, a number of courts in other states that have an exception to employment-at-will similar to Virginia's *Bowman* exception have considered these issues. For example, in *Kavanaugh v. KLM Royal Dutch Airlines*, 566 F. Supp. 242 (N.D. Ill. 1983), which involved a similar challenge to employment-at-will, the District Court held that the public policy of Illinois, which was asserted to be that "citizens of the United States and Illinois shall have the right to retain counsel to represent them in civil matters and to have access to a court of law to protect their property," is a limitation on government, not on private individuals. *Id.* at 244. As the court stated:

> There is no question that the right to counsel and to free access to the courts are important public policies. However, these freedoms usually are expressed in terms of limitations on government, not on private parties.

*Id.* at 244. The court in *KLM* reasoned further that "the employee, simply by retaining an attorney and threatening to sue, could procure that which is unavailable to him through contract - employment security." *Id.* In conclusion, the Court rejected a *Bowman*-type claim for someone who had retained a lawyer.

Similarly, in *Deiters v. Home Depot U.S.A., Inc.*, 842 F. Supp. 1023 (M.D. Tenn. 1993), the District Court held that constitutional restrictions limit governments, and therefore, the open court policy of Tennessee (Tenn. Const., Art. I, § 17) does not evidence the type of public policy which would constitute a basis for an exception to employment-at-will. *Id.* at 1029.

A third case which rejected a *Bowman*-type claim for an employee who had retained an attorney is *Beam v. IPCO Corp.*, 838 F.2d 242 (7th Cir. 1988). In *Beam*, the Court of Appeals affirmed a lower court ruling which had

rejected a wrongful discharge claim by an employee who was fired for "consulting with" an attorney. In its affirmation, the Circuit Court held:

> In reviewing the dismissal of Beam's complaint, we ask whether an employee fired for consulting an attorney about an employment dispute has a legal remedy under the public policy exception to Wisconsin's employment-at-will doctrine.

*Id.* at 245. The court answered in the negative and stated:

> Extending just cause protections to any employee with the foresight to consult a lawyer about unemployment compensation prior to termination would have the same effect as a policy requiring just cause if an employee has consulted a lawyer regarding any other job related dispute. It would virtually foreclose employees and employers from entering at will contracts by giving employees an indefeasible right to claim just cause protections. This result would plainly conflict with Wisconsin's announced intention to provide a "narrow public policy exception" to the at will rule.

*Id.* at 247.

In short, Plaintiff cannot premise a *Bowman* claim solely on the provisions of the Virginia Constitution because our Constitution does not, standing alone, restrict activities of private citizens. However, the question remains whether Plaintiff can premise a *Bowman* claim on one or more statutes.

## C. *Public Policy Within Virginia Statutes*

Based on these cases, Defendants argue that Plaintiff cannot state a *Bowman* claim simply because he consulted with an attorney to ascertain his legal rights and obligations. Defendants' position is (and is probably well taken) that under the employment-at-will doctrine, the employer may dismiss an employee for any arbitrary and capricious reason, even for a thoroughly immoral and reprehensible reason, so long as the employer does not violate the narrow strictures of the *Bowman* exception or some other explicit exception of clearly articulated public policy. The theory of the defendants, if taken to its logical conclusion, would permit an employer to terminate an employee for exercising his or her rights to vote on their own time, or an employer could insist, as a condition of employment, that an employee would agree to never consult an attorney to ascertain his or her rights under the various state statutes

enacted for the protection of working individuals. *See, e.g.,* Code of Virginia §§ 40.1-52 to 40.1-77 (laws regulating unions, strikes, right to work, etc.); §§ 40.1-78 to 40.1-116 (child labor laws); §§ 40.1-22 to 40.1-28.7 (Occupational Health and Safety); § 40.1-27.1 (discharge of employees for work-related injuries); and §§ 40.1-1 to 40.1-11 (hiring of illegal aliens, etc.). In short, the Defendants' theory would mean that all employees could be banned in perpetuity from obtaining knowledge from a licensed attorney of any rights they had under the laws of Virginia or the United States.

In this case, unlike the situations presented in *Deiters v. Home Depot U.S.A., Inc., supra* (plaintiff retained a lawyer and sued employer for earlier dismissal); *Kavanaugh v. KLM Royal Dutch Airlines, supra* (plaintiff retained a lawyer who sent a threatening letter to the employer); and *Beam v. IPCO Corp., supra* (plaintiff retained a lawyer, provided the lawyer with the defendant's proprietary information, and the lawyer wrote to the employer), Count I of the Amended Motion for Judgment alleges only that Plaintiff was fired for consulting with an attorney. There is no allegation that Plaintiff had retained an attorney to proceed legally against either his employer, Dollar General, or Ryder, Inc. In fact, there is no allegation that Plaintiff had threatened litigation against either party or that Plaintiff intended to file a claim against his employer.

In determining the narrow issue of whether a plaintiff can state a *Bowman* claim when he is discharged for simply consulting with a lawyer, it is necessary to go back to the seminal case of *Bowman v. State Bank of Keysville, supra.* In that case, the Virginia Supreme Court found within the predecessor to § 13.1-662 of the Code of Virginia, an implied public policy favoring uncoerced voting by shareholders. The statute itself does not provide that the "vote" to which a shareholder is entitled must be free from economic coercion. The court implied that right from the generally-recognized precept of democracy that a "coerced vote" is tantamount to no vote at all.

Although it is an exceedingly close call, this Court is of the view that the numerous statutes which the legislature has enacted to protect workers as well as the general common law principal that all persons are presumed to know and obey the law, provide an articulated public policy of the Commonwealth of Virginia that an employee has a statutorily protected right to consult with a lawyer to learn his or her rights under the law. To rule otherwise would be contrary to the very concept of being a "nation of laws and not of men." If the defendants' position were accepted, the working people of this Commonwealth would be subjected to being forced, under the pain of losing their job, to a life of complete ignorance of the rights and protections the legislature has seen fit to afford them. This cannot be the result contemplated by the legislature.

Although attorneys may be subjected to great criticism and ridicule to the point that Shakespeare's suggestion in *Henry VI* that "the first thing we do, let's kill all the lawyers" has become part of the common parlance, it cannot be gainsaid that lawyers play an important, indeed an indispensable, role in protecting our basic freedoms. To deny a working person the right to consult a lawyer is every bit as violative of the public policy of Virginia contemplated by the various statutes designed to protect workers, as denying an employee who is a shareholder of his or her employer-corporation the right to cast his or her vote for a slate of candidates at an annual or special meeting of shareholders.

The Court does not decide (because the issue is not before it) whether an employee may be terminated for having retained an attorney to bring a legal proceeding against his or her employer. The Court finds only that an employee may not be discharged for simply consulting with a lawyer to ascertain his or her legal rights. For the foregoing reasons, the defendants' demurrer to Count I of the Amended Motion for Judgment is overruled.

### Count II

In Count II, Plaintiff alleges that he was warned by Defendant Lewis not to file or pursue a workers' compensation claim. When Shifflett did so, Lewis terminated him. Shifflett alleges this discharge violates Virginia law.

Section 65.2-308(A) of the 1950 Code of Virginia, as amended, provides "No employer or person shall discharge an employee solely because the employee intends to file or has filed a claim under this title." The Act further provides "The employee may bring an action in a circuit court having jurisdiction over the employer or person who allegedly discharged the employee in violation of this section." *Id.* § 65.2-308(B). It is this provision that Shifflett alleges was violated by Defendants.

Contrary to Defendants' argument in support of their demurrer, Shifflett alleges only that he was fired because he pursued and/or filed a workers' compensation claim. Motion ¶ 13. Count II does not allege that Plaintiff sought to consult an attorney or that he requested time off to do so. Since Plaintiff alleges only that the cause of his discharge was his intent to file a claim, his allegation presents a justiciable question of fact. As such, a demurrer cannot be sustained as to Count II. Because Count I remains as a viable cause of action, the issue of whether punitive damages are an appropriate remedy is not demurrable until evidence has been presented.

The Clerk of the Court is directed to send certified copies of this order to William W. Helsley, Esq., counsel for Plaintiff, and to Sharon Maitland Moon, Esq., counsel for Defendants.