**John H. KAVANAGH, Plaintiff,**

v.

**KLM ROYAL DUTCH AIRLINES, an agency of a foreign state, Defendant.**

No. 83 C 153.

United States District Court,
N.D. Illinois, E.D.

June 20, 1983.

Michael J. Murray, Murray & Girard, Ltd., Chicago, Ill., for plaintiff.

Michael G. Shannon, Patricia C. Slovak, Burns, Summit, Rovins & Feldesman, New York City, Richard J. Hoskins, Schiff, Hardin & Waite, Chicago, Ill., for defendant.

### Memorandum

LEIGHTON, District Judge.

This suit arises out of plaintiff's discharge by defendant KLM Royal Dutch Airlines, a company organized under Dutch law and most of whose stock is owned by the Kingdom of the Netherlands. Consequently, Count I of plaintiff's complaint invokes this court's jurisdiction pursuant to the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602–11, and 28 U.S.C. § 1330. The second count of the complaint seeks redress pursuant to 42 U.S.C. § 1983. The cause is before the court on defendant's motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. For the following reasons, accepting the following allegations of the complaint as true, the court grants the motion.

### I

Plaintiff, an Illinois resident, was employed in 1972 by KLM as a reservation agent. He rose quickly through the ranks into substantial management positions; by 1980, he was promoted to U.S. Company Sales Manager, a position which required his being assigned to Dharan, Saudi Arabia for two years. Following his return to the United States in February 1982, he was assigned to the company's Chicago offices as the District Passenger Sales Manager.

Shortly thereafter, plaintiff and KLM became involved in a wage dispute: the company claimed that he had been mistakenly overpaid some $21,000 in salary while he was in Saudi Arabia. Plaintiff "vigorously disputed" KLM's position, countercharging that, in fact, he had been paid less than what he was promised while he was in foreign service. Despite plaintiff's objections, the company informed him of its plans to make deductions from his salary until the $21,000 had been repaid.

On April 19, 1982, plaintiff retained counsel to represent him in the salary dispute. One week later, his attorney sent a letter, advising KLM of plaintiff's resolve to litigate any attempt to reduce his salary or to take retaliatory personnel action against him. About May 6, 1982, KLM informed plaintiff by letter that he was being discharged. The company, the letter stated, "cannot properly function when its executives must deal with each other through attorneys." Arrangements for the payment of benefits that had accrued to plaintiff by virtue of his employment with KLM were stated at the close of the letter. KLM never made a deduction from plaintiff's salary or benefits with regard to the claimed overpayment.

### II

Plaintiff does not allege in his complaint that his dismissal breached his employment contract with KLM; it is apparent that his relation with the company was an "employment at will." The general rule in American jurisdictions is that an employment at will may be terminated by either party at any time and for any reason. There has developed recently in Illinois a very narrow exception to this rule, however; an employer does not have the unfettered discretion to discharge an at-will employee when to do so would contravene a clearly mandated public policy. The leading Illinois cases for this proposition are *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), and *Palmateer v. International Harvester Company,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981).

In *Kelsay,* the Illinois Supreme Court ruled that the discharge of an employee for

filing a workmen's compensation claim is tortious:

> We are not convinced that an employer's otherwise absolute power to terminate an employee at will should prevail when that power is exercised to prevent the employee from asserting his statutory rights under the Workmen's Compensation Act. . . . We cannot ignore the fact that when faced with such a dilemma many employees, whose common law rights have been supplanted by the Act, would choose to retain their jobs, and thus, in effect, would be left without a remedy either common law or statutory. This result, which effectively relieves the employer of the responsibility expressly placed upon him by the legislature, is untenable and is contrary to the public policy as expressed in the Workmen's Compensation Act.

74 Ill.2d at 181–182, 23 Ill.Dec. at 563, 384 N.E.2d at 357.

In *Palmateer,* the Illinois Supreme Court clarified the contours of the new tort it had recognized in *Kelsay.* The court ruled that the tort was not limited to the workmen's compensation context; indeed, a remedy is available whenever the employer's termination of an at-will employee violates a clearly mandated public policy. *Palmateer,* 85 Ill.2d at 130–132, 52 Ill.Dec. at 15–16, 421 N.E.2d at 878–879. Accordingly, the court went on to hold that the state's interest in the orderly enforcement of its criminal code was such that it would be tortious for an employer to discharge an employee for providing information to the police to be used against a fellow employee.

■ The issue before this court, therefore, is narrow: can plaintiff, based on these pleadings, prove some set of facts establishing that his discharge was in violation of a clearly mandated public policy? The complaint states that the public policy violated by KLM is the one assuring that "citizens of the United States and Illinois shall have the right to retain counsel to represent them in civil matters and to have access to a court of law to protect their property." There is no question that the right to counsel and to free access to the courts are important public policies. However, these freedoms usually are expressed in terms of limitations on government, not on private parties. The invocation of the public interest in the effectuation of these policies to create new common law rights would be unprecedented; a party does not violate another party's right to counsel or to free access to the courts by taking measures, even though retaliatory and spiteful in nature, which lawfully are available to him simply because resort to these measures somehow penalizes the other party for suing. For instance, if a squabble developed between merchants who regularly conducted business with one another, although they were not under contract to do so, would one of the merchants commit a tort if he told the other that they would no longer do business if suit were filed?

Even if the court limited plaintiff's theory to the employment context, it would metamorphose the supposedly narrow exception recognized in *Kelsay* and *Palmateer* into the monster that swallowed the employment-at-will rule. Whenever a dispute between an employer and an at-will employee threatens to culminate in the employee's discharge, the employee, simply by retaining an attorney and threatening to sue, could procure that which is unavailable to him through contract—employment security. KLM persuasively argues that inherent in the employment-at-will relationship it had with plaintiff was an understanding that the organization and its managers function more effectively in an atmosphere of trust and cooperation; when this harmony is destroyed, regardless of who is at fault, it is in the interest of all concerned to terminate their relationship. The rule advocated in the complaint ironically would penalize a company for discharging an at-will employee when the employment relationship has completely soured. Plaintiff cannot stake his claim on the allegation that KLM by discharging him violated general public policies in favor of the right to counsel and the right to free access to the courts.

Indeed, in his brief in opposition to this motion to dismiss, plaintiff all but abandons

the broad proposition presented in the complaint in favor of a narrower approach. He argues that the public policy violated by his discharge is found in a statute unmentioned in the pleadings—Section 9 of the Illinois Wage Payment and Collection Act, Ill.Rev. Stat. ch. 48, § 39m–9. Section 9 prohibits deductions from wages except under specified circumstances and states procedures whereby the employer is required to notify the Illinois Department of Labor when a disputed wage deduction is made. Plaintiff finds one sentence in the last paragraph of Section 9 to be particularly relevant:

> In case of a dispute over wages, the employer shall pay, without condition and within the time set by this Act, all wages or parts thereof, conceded by him be due, leaving to the employee all remedies to which he may otherwise be entitled as to any balance claimed.

He also focuses on language found in Section 11 of the Wage Payment and Collection Act:

> Nothing herein shall be construed to prevent any employee from making complaint or prosecuting his own claim for wages.

Ill.Rev.Stat. ch. 48, § 39m–11.

As plaintiff points out, Judge Moran of this court in *Aponte v. National Steel Service Ctr.,* 500 F.Supp. 198, 203–204 (N.D.Ill. 1980), noted that the language relied on by plaintiff recognizes that an aggrieved employee has the right to institute a private suit under the Act. This, plaintiff contends, evinces a clearly mandated public policy favoring the assertion of employee rights under the Wage Payment and Collection Act in the courts which was undermined when he was fired for retaining an attorney. Plaintiff argues, therefore, that this case can be likened to *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), in which, as previously discussed, the Illinois Supreme Court recognized a discharge to be tortious when it contravened the public policy favoring the assertion of employee rights under the Workmen's Compensation Act. But the language in the Wage Payment and Collection Act cited by plaintiff does not create substantive rights; rather, it preserves them, standing in stark contrast to the Workmen's Compensation Act, the subject of the *Kelsay* opinion, which affirmatively created new rights in place of old ones. At any rate, it is apparent that plaintiff cannot state a retaliatory discharge claim on the basis of the facts alleged even if the court, construing the statute favorably to him on this motion to dismiss, were to hold that it may clearly mandate a policy favoring the exercise of certain rights.

Although plaintiff argues that his discharge contravened the public policy favoring the exercise of rights under the Wage Payment and Collection Act, it is obvious from his complaint that he has no standing to assert rights under the Act because KLM never made a deduction from his salary, the *sine qua non* of a claim under the Act. Therefore, it would be anomalous for the court to hold that he was protected from retaliatory discharge because of the Act. In essence, he asks the court to find that an at-will employee cannot be discharged because of any dispute with his employer concerning the payment of wages when he has retained an attorney. Such a result, the court concludes, is not clearly mandated by any public policy favoring the exercise of rights under the Wage Payment and Collection Act. The nexus between the circumstances of plaintiff's discharge and this Act is simply too attenuated for the court to allow the suit to proceed under this theory. Consequently, no useful end would be served by allowing an amendment to the complaint in which plaintiff bases his retaliatory discharge claim on the Act. The first count of the complaint, therefore, must be dismissed with prejudice.

### III

In Count II of his complaint plaintiff alleges that his discharge by KLM violated 42 U.S.C. § 1983, the statute which provides a remedy for persons who have been deprived of federally protected rights "under color of any statute, ordinance, regulation, custom or usage of any State or Territory." He avers that KLM's conduct was under color of state law because it is an agency of the Kingdom of the Netherlands

and because its activities are closely regulated by the federal government and the State of Illinois. In the context of Section 1983, however, the term "state" is not intended to include foreign governments; it clearly is a reference to a state of the United States. Moreover, the fact that a business is closely regulated by government is not a sufficient basis for attributing its activities to the state. *Cohen v. Illinois Institute of Technology,* 524 F.2d 818, 826 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976). Plaintiff must allege that the state "has encouraged the practice in question, or at least given its affirmative approval to the practice." *Id.*

The absence of state action is not the only flaw marring the second count of the pleadings; the court's analysis of the state-law retaliatory discharge claim establishes further that KLM did not deprive plaintiff of a protected property or liberty interest in this case. See *Smith v. Board of Education of Urbana School Dist. No. 116,* 708 F.2d 258, 261 (7th Cir.1983) Consequently, he again fails to state a claim. Defendant's motion to dismiss the complaint, therefore, is granted in its entirety with prejudice. This suit is dismissed.