Paul WHITMAN, Plaintiff,

v.

SCHLUMBERGER LIMITED, a corporation, Schlumberger Technologies, and Does 1–10, Defendants.

No. C 92–20150 JW.

United States District Court, N.D. California.

June 24, 1992.

Mitchell Green, San Francisco, Cal., for plaintiff.

Douglas W. Phillips, Morrison & Foerster, Palo Alto, Cal., for defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

WARE, District Judge.

Defendant Schlumberger Technologies, Inc. ("STI") moves pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss Plaintiff's Fourth Cause of Action, retaliation in violation of public policy, for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

Defendant's motion to dismiss raises the question of what constitutes violations of "public policy." Plaintiff alleges that his employer took adverse employment actions against him because he threatened and ultimately filed a lawsuit against his employer. Plaintiff contends that these alleged actions violate a California public policy: to allow access to the courts free of retaliation. Defendant argues that California does not and should not recognize such a public policy.

Plaintiff has been employed by Defendant as a sales executive since September, 1981. In approximately January, 1986, Defendant assigned Plaintiff to the task of winning back Intel, one of Defendant's major customers. Defendant told Plaintiff the assignment would be a difficult, long-term project and that Plaintiff would not receive any commission income until after the Intel account was reacquired. Moreover, Defendant told Plaintiff that to compensate for the risk and sacrifice involved with this project, Plaintiff would earn substantial commission income after obtaining the account.

Plaintiff accepted this assignment, and worked continuously to win back Intel's business. In Spring 1990, Intel made a major purchase of Defendant's equipment, and became Defendant's largest customer. Defendant awarded Plaintiff for his accomplishment and gave him a bonus. Plaintiff alleges he was close to winning back the account in early 1990. Plaintiff claims that, as he was nearing completion of the Intel assignment, Defendant began to take actions designed to undermine Plaintiff's promised commission income.

In 1991, Plaintiff claims he was removed from the Intel account and denied the commission income resulting from his effort to win back the account. Defendant reclassified the account as a "house account" thus permitting all commission income to accrue directly to Defendant, rather than to Plaintiff. After the reclassification, a multi-million dollar purchase contract was signed by the Defendant and Intel. Plaintiff claims the contract was the result of the negotiations he conducted with Intel. Defendant has continued to refuse to pay Plaintiff any commissions resulting from Intel's purchases.

Plaintiff filed suit in Santa Clara County Superior Court alleging four causes of action: 1) breach of contract; 2) breach of implied covenant of good faith and fair dealing; 3) unjust enrichment; and 4) retaliation in violation of public policy. Defendant subsequently removed the action to this court based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

This motion concerns the fourth cause of action only. Plaintiff alleges that Defendant took adverse employment actions against him in retaliation for Plaintiff giving notice of his intent to file suit over the events alleged above. Plaintiff alleges that this retaliatory action violates California public policy. In particular, Plaintiff alleges that ten days subsequent to being notified of Plaintiff's intent to file suit, Defendant gave Plaintiff an adverse performance evaluation. This evaluation was the lowest of Plaintiff's career with Defendant. Plaintiff also alleges that Defendant modified his 1991 quota with the intent to deny him substantial commission income and provide a basis for the negative evaluation. Plaintiff further alleges that Defendant threatened to take away many of Plaintiff's customer accounts.

Defendant files this motion seeking dismissal of the fourth cause of action, retaliation in violation of public policy. Defendant argues that Plaintiff does not state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Specifically, Defendant argues that California law does not recognize a public policy which protects the right to sue one's employer without adverse employment consequences.

## II. DISCUSSION

"For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true. The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a)." Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357. The Supreme Court has held:

> [I]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ Plaintiff's cause of action for retaliation in violation of public policy is grounded in the California Supreme Court's decision in *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992). The Court outlined four types of cases in which public policy violations tend to arise, including "exercising a statutory right or privilege." *Id.* 4 Cal.Rptr.2d at 878, 824 P.2d at 684. "This is the category of claim asserted by Plaintiff." Pl.['s] Opp'n to Mot. to Dismiss Retaliation Claim.

The *Gantt* court addressed the problem of defining the term 'public policy' as follows:

> The difficulty, of course, lies in determining where and how to draw the line between claims that genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee. This determination depends in large part on whether the public policy alleged is sufficiently clear to provide the basis for such a potent remedy ... [T]he policy in question must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff ...

*Id.* 4 Cal.Rptr.2d at 878, 824 P.2d at 684. The ruling of *Gantt* concludes with the following:

> ... [W]ise caveats against judicial policy-making are unnecessary if one recognizes that courts in wrongful discharge actions may not declare public policy without a basis in either the constitutional or statutory provisions. A public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees and the public.

*Id.*

The California Supreme Court has identified a second requirement to be met after a Plaintiff has identified a constitutional or statutory basis for an asserted public policy. The additional requirement was articulated in *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988), as follows:

Even where, as here, a statutory touchstone has been asserted, we must still inquire whether the discharge is against public policy and affects a duty which inures to the benefit of the public at large rather than to a particular employer or employee.

*Id.* 254 Cal.Rptr. at 217, 765 P.2d at 379. The essence of this inquiry is whether the provision relied upon by the plaintiff is intended merely to regulate conduct between private individuals, or if some greater public policy is implicated. *Id.* Only in the latter instance will the plaintiff prevail in asserting a public policy violation.

Accordingly, the first step in considering Defendant's Motion to Dismiss is to determine: 1) what public policy Plaintiff believes was violated; and 2) whether Plaintiff has identified a valid constitutional or statutory provision to support his allegation of a public policy violation.

■ Plaintiff claims "it is the policy of this state to allow access to courts to remedy disputes and it is further policy of this state to permit that access free from retaliation." Pl.['s] Opp'n to Mot. to Dismiss. Plaintiff cites Cal. Const. art. I, § 16, Cal. Civ.Proc.Code § 30 (West 1982), Cal.Civil Code § 3274 (West 1982), and Cal.Lab.Code § 206, 206.5 (West 1982), as bases for the above stated public policies.

Cal. Const. art. I, § 7 concerns the right to trial by jury as being "an inviolate right and shall be secured to all ..." This section of the California Constitution addresses the question of whether a jury right exists in the State and states both how many persons must sit on a jury and what percentage of jury members may render a verdict. This section is silent on the question of whether Plaintiff has a right of access to the courts free from retaliation by another. This section only provides that in a civil case Plaintiff has the right to have questions of fact decided by a jury.

Cal.Civ.Proc.Code § 30 (West 1982) defines the term 'civil action' as being "prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." *Id.* This section is part of the preliminary sections of the Cal.Civ.Proc. Code which define numerous terms used throughout the Code, but the section is silent on the question of whether Plaintiff has a right of access to the courts free from retaliation from another.

Cal.Civ.Code § 3274 (West 1982) states the kinds of relief which can be granted by California courts.

As a general rule, compensation is the relief or remedy provided by the law of this State for the violation of private rights, and the means of securing their observance; and specific and preventative relief may be given in no other cases than those specified in this Part of the Civil Code.

The focus of this section is to distinguish money damages from injunctive relief as the general form of relief in civil actions. This section is concerned not with the rights of plaintiffs to sue without retaliation, but rather is concerned only with what kind of relief can be afforded to those plaintiffs who prevail.

Plaintiff cites Cal.Lab.Code § 206(a), which states:

In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee *all remedies he might otherwise be entitled to* as to any balance claimed.

(emphasis added by Plaintiff). Plaintiff also cites Cal.Lab.Code § 206.5, which states:

No employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of such wages has been made. Any release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee and the violation of the provisions of this section shall be a misdemeanor.

*Id.* Plaintiff claims these two sections stand for "the right to a remedy specifically in the employment context." Pl.['s]

Opp'n to Mot. to Dismiss. However, §§ 206(a) and 206.5 have a scope far narrower than Plaintiff suggests. Section 206(a) states that when a wage dispute involves both disputed and undisputed amounts, an employer must pay the undisputed amounts and the employee may seek relief for the amount in dispute. Cal.Labor Code § 206(a) (West 1982). "Section 206 is designed to secure to the wage earner prompt payment of all wages concededly due and it expressly precludes an employer's coercing a settlement of disputed claims by offering conditional payment." *Reid v. Overland Machined Products*, 55 Cal.2d 203, 10 Cal.Rptr. 819, 359 P.2d 251, 253–54 (1961). There is nothing in § 206(a) to suggest that an employer cannot act against an employee who files suit to recover the disputed amount, or that there is a public policy interest in having employees sue their employers unimpeded. Moreover, § 206.5, which deals with the execution of releases, is inapplicable in this case and does not address the question of an employee's right to sue free of retaliation by an employer.

Returning to the California Supreme Court's opinion in *Gantt*, 4 Cal.Rptr.2d 874, 824 P.2d 680, the Court admonished trial courts presented with the problem of defining a public policy to "venture into this area, if at all, with great care and due deference to the judgment of the legislative branch 'lest they mistake their own predilections for public policy which deserves recognition at law.' " *Id.* (citing *Hentzel v. Singer Co.*, 138 Cal.App.3d 290, 188 Cal. Rptr. 159, 163). It is the spirit of this admonition which underscores the requirement that any asserted public policy be rooted in the California Constitution or within a statute. Plaintiff has cited numerous constitutional and statutory provisions, but none serve to clearly identify and support a public policy favoring free access to the courts without fear of reaction by the defendant.

The question raised by Plaintiff's cause of action for alleged retaliation has been considered by California courts. In *Becket v. Welton Becket & Associates*, 39 Cal. App.3d 815, 114 Cal.Rptr. 531 (1974), the California Court of Appeal, Second District, held that limitations on the power of employers to terminate at-will employees have been recognized to prevent retaliation for actions by the employee which are protected by public policy. *Id.* 114 Cal.Rptr. at 533. However, the plaintiff in *Becket*, who was suing his employer as the executor of an estate and was threatened with termination for doing so, was unable to identify any statutory basis for a right to sue without retaliation. The Court held that:

> An executor stands in a fiduciary relationship to the heirs and has a duty to protect their legal rights in the estate … That duty is not owed to the general public but instead is private in nature. As trustee of the estate the executor is not a public officer with a public trust … His acceptance of the position of executor and his decision to embark on the litigation were not mandated by any law … The fidelity which the employer demanded and which it had a right to expect from plaintiff was not illegal in nature.

*Id.* at 534 (emphasis added).

The holding in *Becket* was reaffirmed eleven years later in *Khanna v. Microdata Corp.*, 170 Cal.App.3d 250, 215 Cal.Rptr. 860 (1985). The California Court of Appeal, First District, explained *Becket* as follows:

> *Becket v. Welton Becket & Associates* [citation omitted] does provide authority for the proposition that "public policy" does not limit the power of an employer to discharge under an "at will contract" in retaliation for the filing of a lawsuit against the employer … [T]he theory adopted in *Becket* would insulate the employer only against tort liability grounded on a violation of public policy …

*Id.* 215 Cal.Rptr. at 867 n. 3. The *Khanna* court distinguished between actions by an employer which violate public policy and those which give rise only to an action for breach of the covenant of good faith and fair dealing. *Id.* at 867.

## III. CONCLUSION

Combining the cases cited above with Plaintiff's inability to persuasively ground

his claim of a public policy violation in any state constitutional or statutory provisions, Plaintiff's fourth cause of action for retaliation must be dismissed for failure to state a claim upon which relief can be granted.

While the Court is granting Defendant's Motion to Dismiss the fourth cause of action, nothing in this Order should be interpreted as an assessment of the Plaintiff's remaining causes of action. The analysis by the Court presented above is intentionally limited to the issue of the alleged retaliatory actions in violation of public policy. The Court reserves its judgment on the remaining causes of action.

Accordingly, Defendants motion to dismiss is GRANTED.

IT IS SO ORDERED.