William **GROCE**, Plaintiff–Appellant,

v.

Bob **FOSTER** and Midwestern Services, Inc., Defendants–Appellees.

No. 78068.

Supreme Court of Oklahoma.

July 12, 1994.

As Corrected on Denial of Rehearing Sept. 28, 1994.

Patrick J. Malloy III, Malloy & Malloy, Inc., Tulsa, and Leslie V. Williams, Jr., Earl H. Remmel, Williams & Remmel, Oklahoma City, for appellant.

Michael L. Darrah, Christopher J. Bergin, Huckaby, Fleming, Frailey, Chaffin & Darrah, and Clell I. Cunningham, III, Miller, Dollarhide, Dawson & Shaw, Oklahoma City, for appellees.

OPALA, Justice.

This certiorari proceeding tenders an issue of first impression—whether, under the limited public-policy exception to the termination-at-will doctrine, first announced in *Burk v. K-Mart Corporation,*[1] a wrongful discharge action will lie against an employer who fires an employee for the latter's refusal to dismiss his common-law negligence action against a third party, who was a customer of the employer, for redress of on-the-job injuries. We answer in the affirmative.

**I**

**THE ANATOMY OF LITIGATION**

Recovery is sought for tortious discharge from employment in violation of this State's public policy.[2] The defendants [appellees] are Midwestern Services, Inc. and its owner, Bob Foster [collectively called Foster or employer]. Their former employee, plaintiff below [appellant], is William Groce [employee or Groce].

Groce, while working for his employer (an oil field service company) at a wellsite, was helping employees of Hydraulic Well Control, Inc. [Hydraulic] hoist a pipe when he suffered bodily harm. According to Groce, Hydraulic employees, while operating a rig, negligently dropped a pipe on his foot.

■ Groce received workers' compensation benefits from his employer. Later, he brought *a third-party claim*[3] *to recover for his work-related injuries* against Hydraulic,

---

1. Okl., 770 P.2d 24, 28 (1989). *See Sargent v. Central Nat. Bank & Trust Co.,* Okl., 809 P.2d 1298, 1300 (1991); *Todd v. Frank's Tong Service, Inc.,* Okl., 784 P.2d 47, 50 (1990).

2. *Burk, supra* note 1 at 28.

3. An exception to workers' compensation exclusivity provisions permits an injured worker to bring an action *against another employer* on the same job. 85 O.S.1981 § 12. The pertinent terms of § 12 are:

"The *immunity* created by the provisions of this section *shall not extend to action by an employee ... against another employer ... on the same job as the injured ... worker ...* even though such other employer may be considered as standing in the position of a special

which was *not only* a service contractor at the jobsite, but *also* his employer's customer. When Hydraulic informed Foster of his employee's suit, Foster demanded that Groce dismiss it at once.[4] Groce refused to do so and was fired immediately; this § 44 suit[5] for wrongful discharge followed. In support of its dismissal quest below, the employer invoked the "at-will termination rule".[6] Although Groce urged at nisi prius the *Burk* public-policy exception protects him from termination for exercising a legal right,[7] the trial court dismissed this action for failure to state a claim. The Court of Appeals affirmed that decision. We granted certiorari upon Groce's petition.[8]

## II

## THE PUBLIC–POLICY EXCEPTION TO THE AT–WILL EMPLOYMENT DOCTRINE

■ While Oklahoma jurisprudence has long adhered to and continues to retain the American *employment-at-will* doctrine,[9] *Burk*[10] adopted a narrow tort-based exception. Its scope is limited to a circumscribed class of cases in which the discharge is shown to be *contrary to a clear mandate of public policy that is articulated by constitutional, statutory or decisional law.*[11] *In the context of the public-policy*[12] *exception, the employer is free to advance all of its legitimate interests except those which may collide with the employee's rights that are explicitly shielded by law.*

The *Burk* exception had been foreshadowed in *Hinson v. Cameron,*[13] where we identified five public-policy areas in which wrongful-dismissal claims may be actionable. These are an employee's discharge for (1) refusal to participate in an illegal activity; (2) performance of an important public obligation; (3) *exercise of a legal right or interest*; (4) exposure of some wrongdoing by the employer; and (5) performance of an act that

---

master of a loaned servant where such special master neither is the immediate employer of the injured ... worker nor stands in the position of an intermediate or principal employer to the immediate employer of the injured ... worker...." [Emphasis supplied.]
*See also* the provisions of 85 O.S.1991 § 44 which *regulate* the procedure that governs claims against third parties.

4. Groce urged below that the employer threatened to "blackball" him. He withdrew that allegation on appeal.

5. *See infra* note 25 for the pertinent terms of 85 O.S.1991 § 44.

6. Generally, an employment contract for an indefinite term may be terminated without contractual liability at the will of *either* party. *Hinson v. Cameron*, Okl., 742 P.2d 549, 552 (1987).

7. *Burk, supra* note 1 at 28.

8. The Court of Appeals' decision was handed down on January 19, 1993; a timely certiorari petition came on February 2, 1993.

9. *See Hinson, supra* note 6 at 552; *Singh v. Cities Service Oil Company*, Okl., 554 P.2d 1367 (1976); *Foster v. Atlas Life Ins. Co.*, 154 Okl. 30, 6 P.2d 805 (1932).
　　The "at-will" doctrine is a departure from the English common law. The latter tradition presumed a hiring for one year. L. LARSON & P. BOROWSKY, UNJUST DISMISSAL, § 2.04 at 2–6 (1989). In the late nineteenth century, courts in the United States began to discard the English formulation and to develop an "American rule". *See* Feinman, The Development of the Employment at Will Rule, 20 Am.J.L.Hist. 118, 122–23 (1976). The crystallization of an American rule is attributed to Horace Gray Wood, whose 1877 treatise on employment relations (MASTER AND SERVANT, § 134 at 272) states:
　　"With us, the rule is inflexible that a general or indefinite hiring is prima facie a hiring at will, and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring * * * and is determinable at the will of either party * * *."
Under this doctrine employers were able to "dismiss their employee[s] at will, be they many or few, *for good cause or no cause, or even for cause morally wrong*, without thereby being guilty of legal wrong." (Emphasis added.) *Payne v. Western A.R.R. Co.*, 81 Tenn. 507, 519, 520 (1884), *overruled in part by Hutton v. Watters*, 132 Tenn. 527, 179 S.W. 134 (1915).

10. *Burk, supra* note 1 at 28. *See Sargent, supra* note 1 at 1300; *Todd, supra* note 1 at 50.

11. *Burk, supra* note 1 at 28.

12. The determination of public policy is generally a question of law. *Pearson v. Hope Lumber & Supply Co., Inc.*, Okl., 820 P.2d 443, 444 (1991).

13. *Hinson, supra* note 6 at 552–553.

public policy would encourage or refusal to do something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation.[14]

Groce urges Art. 2, § 6, Okl. Const.,[15] the so-called Open-Court-of-Justice Clause, gives him a constitutional right to forensic redress of his bodily harm against the responsible party and makes wrongful any dismissal for exercising one's right to bring a § 44 suit for a third party's negligence.[16] The employer, who counters that Groce has not met his burden to show that a clear mandate of legislative or judicially recognized public policy has been violated, seeks to persuade us that the constitutional command for open access to the courts (a) is directed *only* to those who administer legal process rather than to *private individuals*, (b) was framed to provide for equality in the *administration of legal process*, and (c) creates neither a new *private* right nor claim. According to the employer, because Groce's third-party negligence action against Hydraulic is *still pending*, his denial-of-court-access complaint must fail.[17]

■ These arguments of the parties overlook the full *statutory implications* of the employer's conduct which are *central* to our consideration of the case. In an at-will employment setting the relationship between the employer and employee is *contractual or promise-based*—express or implied.[18] The employer, to avoid assumed economic detriment to itself, would read into Groce's employment contract an *implied covenant* that would preclude the employee from pursuing *any claim for bodily harm caused on the job* by the tortious acts of an employer's customer. Rejecting today this notion advanced for the employer's position, we hold that a discharge in retaliation for the worker's refusal to abandon his/her § 44 lawsuit against a third party to redress an on-the-job injury impermissibly interferes with the legally protected recovery regime for those who suffer work-connected harm. It is hence in breach of the law's declared public policy.

Today's decision does *not* make actionable a discharge for employee resistance to *all forms* of employer-practiced economic intimidation. *Far from it.* What the court must and does condemn as a breach of *declared policy* is forcing one's employee to choose between *keeping a job* or *pressing a statutorily protected § 44 claim for legal redress of an on-the-job injury*.[19] No matter how economically advantageous this conduct may be to the employer, an employee cannot be compelled, directly or obliquely, to bear the loss of his/her on-the-job harm.[20] Having to give

---

**14.** *Hinson, supra* note 6 at 552–553. *See Tate v. Browning–Ferris, Inc.*, Okl., 833 P.2d 1218, 1224–1225 n. 24 (1992); *see also Vannerson v. Bd. of Regents of U. of Okl.*, Okl., 784 P.2d 1053, 1054–1055 (1989).

**15.** Art. 2, § 6, Okl. Const., provides in pertinent part:
"The courts of justice of the State shall be *open to every person*, and *speedy and certain remedy afforded* for every wrong and *for every injury to person*, property, or reputation...." [Emphasis supplied.]

**16.** Groce points to *Smith v. Atlas Off–Shore Boat Service, Inc.*, 653 F.2d 1057 (5th Cir.1981), where an employee was terminated for bringing a personal injury § 44 suit against his employer under the Jones Act, 46 U.S.C. § 688. The court found the termination wrongful as a violation of public policy clearly articulated in the federal statute.

**17.** The employer points to some jurisdictions which have failed either to (a) recognize a public-policy exception to the "at-will employment" doctrine or (b) find that an Open–Court–of–Jus-

tice Clause *creates* a private claim for wrongful termination or *guarantees redress for every wrong*. *See DeMarco v. Publix Super Markets, Inc.*, 384 So.2d 1253 (Fla.1980); *Kavanagh v. KLM Royal Dutch Airlines*, 566 F.Supp. 242 (N.D.Ill.1983); *Simpson v. Kilcher*, 749 S.W.2d 386, 389 (Mo. 1988). *See also Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 776 P.2d 488, 491 (1989); *McCloskey v. Eagleton*, 789 S.W.2d 518 (Mo.App.1990).

**18.** *See Burk, supra* note 1 at 28; *Missouri, K. & T. Ry. Co. v. West*, 38 Okl. 581, 134 P. 655, 658 (1913), *appeal dismissed*, 232 U.S. 682, 34 S.Ct. 471, 58 L.Ed. 795 (1914).

**19.** *See* 85 O.S.1991 § 45. Its terms are:
"No *benefits*, savings or insurance of the injured employee, independent of the provisions of this act shall be considered in determining the *compensation or benefit* to be paid under this act." [Emphasis added.]

**20.** *See* 85 O.S.1991 § 47. Its terms provide:
"No agreement by an employee to waive his right to compensation under this act [Workers' Compensation Act] shall be valid."

up *any part of one's claim* in the face of an employer's threat of discharge is just as repugnant to the expressed *public policy* as is being forced into paying or contributing to the employer's compensation liability insurance premiums.[21] In both instances it is the employee to whom the cost of on-the-job harm would be impermissibly shifted. That which the law prohibits the employer from exacting *contractually* may not be secured with impunity *through naked intimidation.*

Since every employee enjoys *explicit legislative protection* from discharge for laying claim to compensation *against his/her very own employer,*[22] with what modicum of persuasion may the employer argue today that it is *consistent with public policy* to fire one who *for the same on-the-job harm* presses a *statutorily authorized § 44 action against a third party*[23]—an *utter stranger* to the traditionally required bond of loyalty between the master and servant? To condition a job on the employee's abandonment of that legislatively-bestowed benefit is no less a breach of public policy than making employment dependent upon the employee's willingness to commit perjury.[24]

*Lastly,* Foster's attempt to coerce Groce into withdrawing his claim against Hydraulic [the third party] clearly offends the articulated statutory policy that makes the entire legal recovery regime for a worker's on-the-job injury subject to the Workers' Compensation Court's exclusive jurisdiction over settlements and other agreed dispositions.[25] The Workers' Compensation Act[26] *explicitly* confers upon that court supervisory powers over all agreements reached between the injured employee and either his/her employer or the responsible third party. To countenance an employer's coercing its employees into relinquishing their claims for redress of work-related harm has the effect of defeating the Workers' Compensation Court's supervision of the process and contravenes the stated legislative policy. The employer's insistence on Groce's dismissal of his negligence claim is hence in *breach of a public policy articulated in 85 O.S.1991 §§ 5–7, 12, 44–47 and 84.*

## III

### DISMISSAL UNDER 12 O.S.1991 § 2012(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED WAS IMPROPER UNDER THE FACTS PLED BY THE EMPLOYEE.

■ A pleading must not be dismissed for failure to state a legally cognizable claim *unless* the allegations indicate *beyond any doubt* that the claimant can prove no set of facts which would entitle it to relief.[27] If the

---

**21.** *See* 85 O.S.1991 § 46. Its terms are:

"No agreement by any employee to pay any portion of the premium paid by his employer to the cost of mutual insurance or other insurance, maintained for or carried for the purpose of providing compensation as herein required, shall be valid, and any employer who makes a deduction for such purpose from the wages or salary of any employee entitled to the benefits of this act shall be guilty of a misdemeanor." *See Parkhill Truck Co. v. Brewer,* Okl., 354 P.2d 774, 776–77 (1960); *Welty v. Martinaire of Oklahoma, Inc.,* Okl., 867 P.2d 1273, 1274–76 (1994) (condemning an employer for shifting to the employee liability for payment of any part of the workers' compensation insurance premium).

**22.** 85 O.S.1991 §§ 5–7. The pertinent terms of § 5 state:

"No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, *or has retained a lawyer to represent him in said claim....*" [Emphasis added.]

**23.** 85 O.S.1991 §§ 12 and 44.

**24.** *See Petermann v. International Brotherhood of Teamsters,* 174 Cal.App.2d 184, 344 P.2d 25 (1959).

**25.** *See* 85 O.S.1991 §§ 44 and 84. *See also Oklahoma Gas & Electric Co. v. Kiblinger,* 167 Okl. 48, 28 P.2d 9, 11 (1933). The pertinent terms of § 44 provide that *"[t]he compromise of any such cause of action by the worker at any amount less that the compensation provided for* by the Workers' Compensation Act shall be made only with *the written approval* of the [Workers' Compensation] Court." [Emphasis added.]

**26.** 85 O.S.1991 §§ 1 et seq.

**27.** *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Atchison, Topeka, and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 569, 107 S.Ct. 1410, 1417 n. 15, 94 L.Ed.2d 563 (1987); *Frazier v. Bryan Memorial Hosp. Authority,* Okl., 775 P.2d 281, 287 (1989). *See also* comments in *Buckner v. General Motors Corp.,* Okl., 760 P.2d 803, 812 (1988).

facts alleged in Groce's petition were proved, the termination in question would constitute a tortious discharge within the narrow *Burk*-announced public-policy exception to the employment-at-will doctrine.

## IV

## THE FALLACY OF THE DISSENT

### A

The mandates of an articulated public policy are drawn from the body of a jurisdiction's constitutional, statutory, and decisional law.[28]  The court's pronouncement today places its reliance on that public policy which is articulated by 85 O.S.1991 §§ 5–7,[29] 12, 44–47, and 84.  It is divined from these sections considered *in combination rather than singly.*  The impact of *all* of these provisions compels our recognition of a public policy that is offended by Foster's retaliatory discharge of Groce for pursuing his legal action to redress an on-the-job injury against a third party, Hydraulic.[30]

In its attempt to divine Oklahoma public policy, the dissent has ignored the *totality* of the law considered by the court.[31]  By beginning and ending its analysis with a narrowly-focused discussion of Art. 2, § 6, Okl. Const., the dissent ignores the full panoply of perti-nent sources from which Oklahoma public policy must be gleaned.

The dissent would have the court hold the claim non-actionable because of a concern that today's opinion implicitly holds that Art. 2, § 6, the Open–Court–Of–Justice Clause, applies to private as well as state actions.[32]  The short answer to this concern is that the court's analysis reaches *beyond* the private-versus-public-remedy dichotomy and finds its anchor in clearly declared public policy.

### B

The authorities used in the dissent's analysis demonstrate that the essence of the opinion's reasoning has been missed.  The articulated public policy approved today is that which gives an employee *statutory access to courts* against a third-party tortfeasor alleged to have occasioned *the worker's on-the-job injury.*  The dissent would distract from the bull's-eye by ignoring *the full range* of legislative sources that support the court's conclusion.

With the exception of *Watson v. Peoples Sec. Life Ins. Co.,*[33] the jurisprudence offered by the dissent addresses factual situations where the employer fires the employee *for bringing suit against the employer* and does not deal with the issue of an employee's discharge for suing a third party for work-related harm suffered by the employee.[34]  In

---

**28.**  *Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 652 P.2d 625, 631 (1982).  *See Hinson, supra* note 5 at 552–553; *Petermann, supra* note 24 at 27.

**29.**  For the pertinent terms of 85 O.S.1991 §§ 5–7, see *supra* note 21.

**30.**  Today's opinion does not countenance, directly or indirectly, an implied right of action *ex delicto* for a private employer's breach of the Art. 2, § 6 mandate.  For the pertinent terms of Art 2, § 6 see *supra* note 15.

**31.**  The dissent ignores an employee's statutory right to redress an on-the-job injury that was occasioned by a third party.  This claim is explicitly recognized by 85 O.S.1991 §§ 12 and 44–47.

**32.**  *See supra* note 30.

**33.**  322 Md. 467, 588 A.2d 760 (1991).

**34.**  The dissent relies upon *DeMarco v. Publix Super Markets,* 384 So.2d 1253 (Fla.1980) (employee discharged after bringing suit for injury to

his minor daughter occurring when she was shopping with her mother); *Deiters v. Home Depot U.S.A., Inc.,* 842 F.Supp. 1023 (M.D.Tenn. 1993) (employee fired after appealing decision of court in prior wrongful discharge action in favor of employer); *Kavanagh v. KLM Royal Dutch Airlines,* 566 F.Supp. 242 (E.D.Ill.1983) (employee discharged after retaining counsel to represent him in suit against employer for unpaid wages); *Meech v. Hillhaven West, Inc.,* 238 Mont. 21, 776 P.2d 488 (1989) (addressed *certified* questions regarding interpretation of the Montana Wrongful Discharge from Employment Act); *McCloskey v. Eagleton,* 789 S.W.2d 518 (Mo.App. 1990) (employee/attorney sued employer after being discharged for filing a suit without employer's approval); *Wagner v. General Elec. Co.,* 760 F.Supp. 1146 (E.D.Pa.1991) (employee discharged after complaining about employer's products to third parties); *Whitman v. Schlumberger Ltd.,* 793 F.Supp. 228 (N.D.Cal.1992) (discharge after employee gave notice of intent to sue employer for unpaid compensation); *Beam v. IPCO,* 838 F.2d 242 (7th Cir.1988) (employee sued employer for discharge after employee

*Watson* an employee sued another employee for sexual harassment. After her employer became aware of the suit, she was fired. She then amended her original complaint to include a cause of action against the employer for her wrongful discharge.[35] *The dissent stopped too short in its analysis of this case. While the Watson court held that an employer was not liable for discharging its employee in retaliation for being drawn into a harassment suit,* the court's main holding—excluded from the dissent's discussion—was:

> "... that [it] is contrary to a clear mandate of public policy to discharge an employee for seeking legal redress against a co-worker for workplace sexual harassment culminating in assault and battery."[36]

In short, after reviewing relevant *statutory provisions*, the Maryland court recognized that firing an employee *for suing a third party for work-connected delictual harm is actionable as conduct in breach of declared public policy.* Here, Groce was not fired for suing his employer but rather for suing a third party believed responsible for the work-related bodily harm.

## V

### SUMMARY

Dismissal from employment in retaliation for an employee's refusal to bear that part of the worker's on-the-job harm for which the law authorizes him to recover from a third party is in breach of a clearly articulated public policy. That policy broadly protects workers against *all* employer-coerced abridgement or relinquishment of their statutory right to *full* legal redress of work-related injuries.[37] Where as a condition of continued employment, express or implied, an employee is expected to give up a statutorily-protected benefit for work-related harm, the provision is null and void.

If Foster punished Groce for doing what the law explicitly authorized him to do—*i.e.*, bringing a § 44 action against a third party for an on-the-job injury—Groce's discharge was a clear case of retaliation for exercising a statutory right. The employer's conduct, from which relief is sought, would fall within the narrow *Burk* exception to the employment-at-will rule. It was error to dismiss the worker's claim for wrongful discharge.

**ON CERTIORARI PREVIOUSLY GRANTED, THE COURT OF APPEALS' OPINION IS VACATED; THE TRIAL COURT'S DISMISSAL ORDER IS REVERSED AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS PRONOUNCEMENT.**

HODGES, C.J., and ALMA WILSON, KAUGER and WATT, JJ., concur.

LAVENDER, V.C.J., and SIMMS, HARGRAVE and SUMMERS, JJ., dissent.

sought the advice of counsel about work-related events); *Smith v. Neyer, Tiseo & Hindo, Ltd.*, 1993 WL 57653 (E.D.Pa.1993) (discharge after employee sued employer for unpaid compensation); *Becket v. Welton Becket & Assoc.*, 39 Cal. App.3d 815, 114 Cal.Rptr. 531 (1974) (son fired after bringing suit against employer on behalf of his father's estate); *Abrams v. Echlin Corp.*, 174 Ill.App.3d 434, 123 Ill.Dec. 884, 528 N.E.2d 429 (1 Dist.1988) (employee discharged after threatening suit to collect unpaid commissions); *Buysse v. Paine, Webber, Jackson & Curtis, Inc.*, 623 F.2d 1244 (8th Cir.1980) (discharge after employee sued employer for unpaid compensation); *Meredith v. C.E. Walther, Inc.*, 422 So.2d 761 (Ala.1982) (employee fired after testifying on behalf of an employees' trust and later becoming a plaintiff in the same suit); *Daniel v. Magma Copper Co.*, 127 Ariz. 320, 620 P.2d 699 (App. 1980) (employee discharged after threatening to sue employer for medical malpractice occurring at a company-owned hospital). *These authorities simply do not address an employee's dismissal because he/she exercised a statutory right to access the courts to seek legal redress for work-related injuries against a party other than the employer.*

**35.** Maryland recognizes a cause of action for abusive discharge when the employer's motivation for termination of employment contravenes a clear mandate of public policy. *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464, 473 (1981).

**36.** *Watson, supra* note 33 at 766.

**37.** This public policy is clearly divinable from the cluster of provisions in 85 O.S.1991 §§ 5–7, 12, 44, 45–47 and 84. For the pertinent terms of these statutory sections, see *supra* notes 3, 18, 19, 20, 21 and 25.

SIMMS, Justice, DISSENTING:

Today the majority extends the public policy exception to the termination-at-will doctrine well beyond the narrow boundaries intended to circumscribe it. This public policy exception first announced in *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989), was adopted with the understanding that it would apply only in a "narrow class of cases." *Id.* Today's pronouncement permits the exception to apply in a case which does not fit within that narrow class, therefore I must respectfully dissent.

*Burk* recognized a cause of action in tort for wrongful discharge where the employee shows that the discharge was contrary to "a clear mandate of public policy as articulated by constitutional, statutory or decisional law." 770 P.2d at 28. The majority finds that the termination of the employee (Groce) in this case was contrary to the public policy guaranteeing litigants access to court.

First, Groce's access to court has not been denied by the actions of his employer. His action against the third party was not affected by the termination, and from all indications it appears his action against the third party is viable. In other words, Groce's access to the courts is not hindered. *See De-Marco v. Publix Super Markets, Inc.*, 384 So.2d 1253, 1254 fn. 1 (Fla.1980) (trial court dismissal of employee's action for wrongful discharge was proper where employee's personal injury action against employer on behalf of daughter was still pending and neither employee nor his daughter had been denied access to the courts).

Moreover, by instituting an action against his employer's customer, Hydraulic Well Control, Inc., Groce was not "exercising his legal rights" under Okla. Const. art. 2, § 6.[1] The majority states that under *Burk* and *Hinson v. Cameron*, 742 P.2d 549 (Okla. 1987), a discharge is actionable when it is done in response to the employee exercising a legal right. However, the "open courts" provision does not create an affirmative right

to be exercised by citizens such as the right to own property or the right to bear arms. Rather, it is a constitutional mandate addressed to and placed upon the courts of Oklahoma to open their doors to any person with a legally cognizable claim. Such provisions are designed to limit the actions of government rather than the actions of private individuals. *Deiters v. Home Depot U.S.A., Inc.*, 842 F.Supp. 1023 (M.D.Tenn. 1993); *Kavanagh v. KLM Royal Dutch Airlines*, 566 F.Supp. 242 (N.D.Ill.1983).

In *Moses v. Hoebel*, 646 P.2d 601 (Okla. 1982), this Court unanimously held that Oklahoma's "open courts" provision prohibited a district court from enjoining the prosecution of a personal injury action until the plaintiff paid the legal expenses of defendants from an earlier action arising from the same injuries which the plaintiff had dismissed while trial was proceeding. We stated:

> "Under the Open–Court–of–Justice Clause of the state constitution, the obligation adjudicated against Moses cannot serve as a bar to his courthouse access for the prosecution of another case. Art. 2 § 6, Okl. Const. Moses' right to proceed with his claim in a subsequent action is protected by that clause. The judge's attempted use of the unsatisfied obligation adjudicated in the dismissed case to prevent Moses from pursuing his claim in the refiled case plainly contravenes both the Open–Court–of–Justice Clause of our own constitution as well as the federal and state minimum standards of due process." 646 P.2d at 604 (Citations omitted).

Therefore, Oklahoma jurisprudence indicates that the purpose of Okla. Const. art. 2, § 6, like the "open courts" clauses of other states, is to limit the actions of the courts of the state, and not the actions of private individuals such as Groce's employer. As a result, Groce's discharge could not have been in retaliation for the exercise of his right to an "open court." *Accord Rigsby v. Murray Ohio Manufacturing Co.*, 1991 WL 95710

---

1. Hereinafter, Okla. Const. art. 2, § 6, is referred to as the "open courts" provision or clause. It provides:

    "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

(Tenn.App.1991), (firing of an at will employee for exercising his constitutional right to free speech on the employer's premises during working hours does not violate the public policy of the state).

In fact, the Montana Supreme Court has interpreted its constitutional "open courts" provision, Mont. Const. art. III, § 6, which is almost identical to Oklahoma's provision, Okla. Const. art. 2, § 6, to be a "mandate to the courts to provide equal access to causes of action recognized at law." *Meech v. Hillhaven West, Inc.,* 238 Mont. 21, 776 P.2d 488, 491–92 (1989). Although Montana's provision was amended in 1972, the amendment had no effect upon the court's decision that "the guarantee was directed at the courts, and it was framed to provide equality in the administration of justice." 776 P.2d at 492. The Montana Supreme Court had traced the origins of the "open courts" provision to portions of the Magna Carta and noted that the meaning of those portions historically have been interpreted to secure a remedy from those who administer the law, i.e., the courts.[2]

This is further seen in a Missouri Court of Appeals decision in which the court affirmed the lower court's order dismissing the employee's wrongful discharge action for failure to state a claim. *McCloskey v. Eagleton,* 789 S.W.2d 518 (Mo.App.1990). The employee, an attorney, argued that his employer, a law firm, fired him in retaliation for bringing an action in his own name against a realtor, a bank and others. The court noted that the "open courts" provision of the Missouri Constitution was not designed to create rights but to allow a person with a legitimate claim recognized by the law access to the courts. In other words, the employee could avail himself of the protections of the "open courts" provision "if and only if he had a legitimate, recognizable claim" against his employer. 789 S.W.2d at 520. There being no such claim, the court determined the employee had failed to state a cognizable action. *See also DeMarco v. Publix Super Markets,*

*Inc.,* 360 So.2d 134, 136 (Fla.Dist.Ct.App. 1978) *aff'd* 384 So.2d 1253 (1980) ("there is no civil cause of action for the interference with the exercise of one's right" to access to courts).

In addition, the "open courts" clause is not a "clear mandate of public policy" which prevents an employer from discharging its employee for bringing a lawsuit against the customer of that employer. A clear mandate of public policy is crucial to the application of the exception to the termination-at-will doctrine. Throughout the *Burk* opinion, the Court emphasized that the public policy exception should only be applied in a very narrow class of cases, i.e. those where there exists a clear mandate of public policy. For instance, the Court stated:

> "In light of the vague meaning of the term public policy we believe the public policy exception *must be tightly circumscribed.*" 770 P.2d at 28–9 (Emphasis added). *See also Smith v. Farmers Cooperative Ass'n of Butler,* 825 P.2d 1323, 1326 (Okla.1992).

As noted above, it is not the employer's conduct against which the "open courts" provision is designed to guard. It's purpose is to ensure that *the State* does not deny a litigant the right to have a legitimate action heard by a court. Other than the fact that the Oklahoma Constitution contains the "open courts" provision, the majority points to no clear mandate of any public policy contravening Groce's termination. However, other jurisdictions have specifically determined that constitutional or statutory "open courts" provisions are not clear mandates of public policy preventing employers from discharging employees who file legal actions against the employer or others.

In *Wagner v. General Elec. Co.,* 760 F.Supp. 1146 (E.D.Pa.1991), the court granted summary judgment to the employer in an action for wrongful discharge where the employee alleged he was terminated for bringing an action against the community in which he lived. The employer had expressed con-

---

**2.** *See also Woody v. State ex rel. Dept. of Corrections,* 833 P.2d 257, 259 (Okla.1992) (Okla. Const. art. 2, § 6, "probably originated with the Magna Carta ...") For a discussion of the historical background of the "open courts" guar- antees including comment on the Magna Carta provision, *see Meech,* 776 P.2d at 491–93 and E. Coke, *The Second Part of the Institutes of the Laws of England,* pt. 1, 53–56 (4th ed. 1671).

cern about the publicity and visibility which the employee received due to the lawsuit, but the employee continued active participation in the litigation. In holding that a constitutional provision guaranteeing access to courts was not a clear mandate of public policy, the court noted that the employee:

"brought a lawsuit by an act of free choice; he sued another as a result of no other coercive force than a singular dispute between two minds. Plaintiff was not caught between Scylla and Charybdis as would an employee called to jury duty who, threatened with termination or statutory penalties, had no free and independent choice—either would result in harm." 760 F.Supp. at 1154.

A New Jersey appellate court also found no clear mandate of public policy in a case where the employer discharged the employee after the employee brought an action over a salary dispute. *Alexander v. Kay Finlay Jewelers, Inc.*, 208 N.J.Super. 503, 506 A.2d 379 (1986), *cert. denied*, 104 N.J. 466, 517 A.2d 449 (1986).

A federal district court addressed the issue in *Kavanagh v. KLM Royal Dutch Airlines*, *supra*, and found no violation of a public policy. The court held:

"There is no question that the right to counsel and to free access to the courts are important public policies. However, these freedoms usually are expressed in terms of limitations on government, not on private parties. The invocation of the public interest in the effectuation of these policies to create new common law rights would be unprecedented; a party does not violate another party's right to counsel or to free access to the courts by taking measures, even though retaliatory and spiteful in nature, which lawfully are available to him simply because resort to these measures somehow penalizes the other party for suing. For instance, if a squabble developed between merchants who regularly conducted business with one another, although they were not under contract to do so, would one of the merchants commit a tort if he told the other that they would no longer do business if suit were filed?

Even if the court limited plaintiff's theory to the employment context, it would metamorphose the supposedly narrow exception ... into the monster that swallowed the employment-at-will rule. Whenever a dispute between an employer and an at-will employee threatens to culminate in the employee's discharge, the employee, simply by retaining an attorney and threatening to sue, could procure that which is unavailable to him through contract—employment security. KLM persuasively argues that inherent in the employment-at-will relationship it had with plaintiff was an understanding that the organization and its managers function more effectively in an atmosphere of trust and cooperation; when this harmony is destroyed, regardless of who is at fault, it is in the interest of all concerned to terminate their relationship. The rule advocated in the complaint ironically would penalize a company for discharging an at-will employee when the employment relationship has completely soured. Plaintiff cannot stake his claim on the allegation that KLM by discharging him violated general public policies in favor of the right to counsel and the right to free access to the courts."

More recently, in *Deiters v. Home Depot U.S.A., Inc.*, 842 F.Supp. 1023, 1029 (M.D.Tenn.1993), the court concluded that the Tennessee constitutional provision guaranteeing access to courts "does not create a clear and unambiguous public policy exception to the employment at will doctrine."

Other courts specifically holding an at-will employee may not bring an action against his/her employer for wrongful discharge where the employee alleges the discharge contravened a constitutional or statutory provision guaranteeing access to courts include: *Whitman v. Schlumberger Ltd.*, 793 F.Supp. 228 (N.D.Cal.1992); *Beam v. IPCO Corp.*, 838 F.2d 242 (7th Cir.1988); *Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 588 A.2d 760 (1991); and, *Smith v. Neyer, Tiseo & Hindo, Ltd.*, 1993 WL 57653 (E.D.Pa. March 1, 1993). Without mentioning "open courts" provisions, the following courts held that discharge of an at-will employee for bringing or

threatening to bring a lawsuit against the employer did not violate any public policy: *Becket v. Welton Becket & Assoc.*, 39 Cal. App.3d 815, 114 Cal.Rptr. 531 (1974); *Abrams v. Echlin Corp.*, 174 Ill.App.3d 434, 123 Ill.Dec. 884, 528 N.E.2d 429 (1 Dist. 1988); *Buysse v. Paine, Webber, Jackson & Curtis, Inc.*, 623 F.2d 1244 (8th Cir.1980) (construing Minnesota law); *Meredith v. C.E. Walther, Inc.*, 422 So.2d 761 (Ala.1982); and, *Daniel v. Magma Copper Co.*, 127 Ariz. 320, 620 P.2d 699 (App.1980).

Moreover, contrary to the inference of the majority opinion, this case is not about the employer reading "an implied covenant of relinquishment" of the right to access to courts into the employment contract. There is no indication that in order for Groce to be employed with the employer he must waive some constitutional right. Rather, the employer is doing what any prudent business would do; it is asking its employees not to sue customers of the business. Indeed, the motivation of the employer in the case at bar for discharging Groce seems quite clear to me. Litigation between an employee of a business and a customer of that business is going to have some negative effect upon the relationship of the business and its customer. It is therefore understandable why the employer would desire to sever its relationship with an employee who was actively pursuing litigation against a customer of the employer. Such a discharge of an at-will employee violates no public policy of this state.

Neither is this action one involving a discharge in retaliation for bringing a workers' compensation claim pursuant to 85 O.S.1991, §§ 5–7 as suggested by the majority opinion.

The burden was on the employee, Groce, to prove that he was discharged in contravention of a clear mandate of public policy, *Parner v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625, 631 (1982), and Groce has failed to meet that burden. It is beyond doubt that Groce could prove no set of facts which would entitle him to relief under Oklahoma law. *Gunn v. Consol. Rural Water & Sewer District No. 1*, 839 P.2d 1345 (Okla. 1992). Since the employee did not have a legally recognized cause of action under the facts and circumstances of this case, it fol-lows that the district court did not err in dismissing the action for failure to state a claim upon which relief could be granted. 12 O.S.1991, § 2012(B)(6). I would affirm the order of the district court dismissing the action.

I am authorized to state that Vice Chief Justice LAVENDER, Justice HARGRAVE, and Justice SUMMERS join with me in the views expressed herein.